JANNIE CALLFAS, APPELLANT, V. WORLD PUBLISHING COM-
PANY, APPELLEE.

FILED JANUARY 31, 1913. No. 16,785.

1. **Libel**: PLEADING. In an action for libel, if the publication com-
plained of makes general charges against the plaintiff, an an-
swer in general terms that the charges are true is insufficient.
The facts must be stated showing that the charge made is true.
If the facts are specifically stated in the charge as published, a
general allegation that they are true is sufficient.

2. ——: ——. In such action if the published words are obviously
defamatory, that is, libelous *per se*, it is not necessary by in-
nuendo to allege or explain the meaning of the words published,
nor to allege special damages.

3. ——: ——. If the published words are ambiguous, or are
meaningless unless explained, or *prima facie* innocent, but capable
of defamatory meaning, the plaintiff must specially allege and
prove the defamatory meaning of the words used, and must
allege and prove special damages. In such case, if no special
damages are alleged and proved, there can be no recovery.

4. ——: ——. SPECIAL DAMAGES. The publication in this case not
being obviously defamatory, and there being no allegation and
proof of the facts from which it can be found that the plaintiff
has suffered special damages for which the defendant is liable,
the judgment for the defendant was the only judgment possible.

APPEAL from the district court for Douglas county:
GEORGE A. DAY, JUDGE. *Affirmed.*

*A. S. Churchill,* for appellant.

*Stout & Rose, contra.*

SEDGWICK, J.

The plaintiff alleged in her petition that the defendant
is a corporation with its principal place of business in
Omaha, Nebraska, "engaged in publishing a newspaper
generally known as the World-Herald, which has a large
circulation in the cities of Omaha, South Omaha, state of
Nebraska, and in various other cities and states," and

the defendant published two articles of and concerning the plaintiff, one on or about the 12th day of May, 1908, and the other on or about the 24th day of May, 1908. She alleged that these articles were libelous, and asked for damages in the sum of $25,000. Upon issue being joined and tried to the jury, there was a verdict and judgment in favor of the defendant, and the plaintiff has appealed.

The record is very large, and the plaintiff has filed a voluminous brief assigning and discussing very many alleged errors. The amended petition, with the exhibits attached, consists of more than 40 sheets of closely typewritten matter, and the evidence as contained in the bill of exceptions covers more than 1,000 sheets. It will be impracticable here to make even a synopsis of the pleadings and evidence. We will have to be content with such reference to the record as we think will illustrate some of the principal questions presented. The petition alleges that the plaintiff is a resident of the city of Omaha, and has been since the 1st day of June, 1907, and that before coming to the city of Omaha she resided in the city of St. Louis for a number of years, and that in the year 1900 she entered the Barnes University Medical Department of St. Louis, Missouri, and took the regular medical course prescribed, which continued for the full course of four school years, and that she graduated from the institution on the 3d day of May, 1904, and received a diploma which conferred upon her the degree of doctor of medicine, with all its rights, benefits, immunities, and privileges. The petition then sets out some of the provisions of the statute of Missouri regulating the practice of medicine, surgery and midwifery, which prescribe the conditions and manner of obtaining a license to practice medicine in the state, and alleges that she complied with those conditions and received a license from the state board of health of the state of Missouri, and that she was then appointed to the position of "hostess of the Temple of Fraternity, at the Louisiana Purchase Exposition held in the city of St. Louis, Missouri, during the year 1904," and was about

the same time "appointed lady physician of the same," and "employed as lady physician of a concession at said exposition known as the 'Boer War';" that "during said time the plaintiff had under treatment as such physician a very large number of patients who were afflicted with a great variety of diseases and ailments, and derived therefrom a large experience in her profession;" that at the close of the exposition she "entered upon the general practice of her profession in the city of St. Louis, and state of Missouri," and that "on or about the 15th of May, 1907, she was duly elected by the Supreme Forest Woodmen Circle, at its regular biennial session, to the position of supreme physician of the Supreme Forest Woodmen Circle, and entered upon the discharge of her duties as such supreme physician on or about the 1st day of June, 1907, and continued to perform the same until on or about the 1st day of June, 1908." She then alleges that on the 12th day of May, 1908, the defendant "published of and concerning the plaintiff a false, wanton, sensational and libelous article," as follows:

"DR. CALLFAS IS SILENT ON CASE.
"Will not Talk about the Poisoned Candy and Alludes to Charge Against Her.
"Shows the Effects of Strain and Refuses to Discuss any Details.

"Dr. Callfas, whose mysterious poisoning through a box of bonbons left on her porch May 1 has been a ten days sensation, was at her desk as usual while the meeting of the board of managers of the Woodmen Circle was in progress in the same building. She denied herself to all callers until Tuesday morning, when she talked to the World-Herald. She sat at her heavy oak desk in her beautifully appointed office, gowned in an expensive and heavy black silk.

" 'When the time comes, I will make a statement,' she said, a trifle sharply. Her eyes and face showed the effects of the two weeks' strain upon her. When asked whether she would talk of the finding of the candy, she

frowned deeply and called to a stenographer in the outer room, 'Anna.' The stenographer came into the room and aimlessly leaned against the desk, pretending to open a bundle of mail. The doctor's palpable subterfuge and reluctance to talk without a witness was openly apparent.

" 'The newspapers have treated me very unkindly,' she said. 'When Mrs. Manchester says repeatedly that there is no trouble, why cannot they let the matter drop. If you want to write a sensational story, go write it and print the charges the other side make against me. When the time comes, I will talk and talk plenty. There is much to be said on my side, and I will say it when I get ready. I have retained attorneys, but I refuse to tell who they are, because it is my business and no one's else.'

" 'Will you attend the annual meeting today?' she was asked. Her eyes snapped and she straightened herself in her chair, gripping the sides with a jerk. 'Of course I will,' she said. 'Why not? This is merely an annual meeting and nothing but reports will be heard. If this matter of the poisoned candy is to be brought up, I have not heard of it. And if the newspapers don't look out, they may get themselves into trouble by what they print.' The determined glance with which she turned to her desk and rustled her heavy silken garments showed that, in any contest of will with her sister officials, Dr. Callfas would not depend entirely upon tact or policy in the management of her affairs.

"Dr. Callfas, the husband, is in the employ of a prominent ear specialist in this city, and is studying this line of his profession with a view of specializing. He says that his wife has never practiced medicine, and he appears to be much worried about the outcome of the matter. Both husband and wife are Canadians and middle-aged people. He is getting but a moderate salary while he studies, while his wife draws $300 a month as supreme physician of the Woodmen Circle.

"The matter had not come before the council meeting at noon, although members of the board had been in close

council with the chief of police this morning regarding the outcome of the poison case."

The petition then contains allegations showing that the Supreme Forest Woodmen Circle is a fraternal beneficiary corporation organized under the laws of Nebraska, and that its constitution provides for the election of a supreme physician of the order whose term of office shall be four years, and alleges that an executive council of the order held one of its sessions in Omaha on the day that the defendant published the said article. The defendant moved to strike out certain parts of the amended petition. The motion was overruled, and the defendant answered. The answer admitted the publication of the two articles alleged, and denied that the articles had "import and meaning as charged in said amended petition," and denied that they were published with the intention or for the purpose as claimed, and alleged that the readers of said articles did not understand them as alleged in the amended petition. It denies that it published any matters which were not true, or with malice or with the intent to in any way injure the said plaintiff or to damage her either in her social standing or relations or her profession, or in any other matters, and denies that the plaintiff suffered any damage by reason of the articles. The answer then alleges that "every matter published of and concerning said plaintiff in its said paper was and is true, and that this defendant at the time the said publication was made believed it to be true, and published the said matter of and concerning said defendant simply as a matter of common news in its said newspaper, and with good motive and for justifiable ends." The plaintiff then filed a motion which at great length asked the court to strike out many specified matters from the defendant's answer, including the general allegation that the matters published by the defendant were true. The motion also asked the court to require the defendant to make its answer more definite, and "that the defendant be required to make its fourth defense pleaded in the amended answer

more definite and certain, by setting forth the ultimate facts upon which it relies to establish the truth of the publications sued upon and admitted in the amended answer to have been published by the defendant, instead of merely its conclusions," and to make its answer more definite in many other similar respects. Upon this motion the court ordered the allegation that the defendant believed the publication to be true stricken out, and overruled the motion in all other respects. Plaintiff then filed a reply denying "each and every affirmative allegation set forth in said amended answer." The briefs discuss some of these questions presented upon the pleadings.

1. Should the court have stricken out the general allegation that the matters contained in the publication were true? "Where the charge is specific, it is sufficient to state that the alleged defamatory words set forth in the petition are true. Where the charge is general, the answer must state facts which show that the defamatory words are true. And, generally, if the answer gives the plaintiff sufficient notice of what defendant will attempt to prove, it is sufficient." *Sheibley v. Fales,* 81 Neb. 795. In an action for libel, if the petition alleges a publication in which specific charges are made against the plaintiff, it is a sufficient answer to allege that the charges against the plaintiff so specified are true; but if the publication, as alleged in the petition, makes the charge against the plaintiff in general terms, without specific allegations constituting the matter charged, it is not a sufficient answer to allege that the charge made in the publication is true. The plaintiff is entitled to know from the pleadings the specific matter that he will be called upon to meet in the trial. If the charges are specifically alleged in the publication complained of, and the answer contained allegations that the charge as published is true, the plaintiff is sufficiently informed as to what he will be called upon to meet. If the publication contained the charge that the plaintiff is a thief, and the answer merely alleges that the charge as made was true, the plaintiff could not

know what facts might be offered in evidence as tending to prove the truth of the charge. If, however, the publication stated fully the facts constituting the charge made, it would be sufficient in the answer to allege that the facts so stated in the publication were true of and concerning the plaintiff. Applying these principles to this case, the result is that, in so far as the publication in question made specific charges of and concerning the plaintiff, the answer that such charges were true is a sufficient defense; but if there is any general charge of and concerning the plaintiff in the publication, and the facts constituting that charge are not specifically stated, the answer alleging the truth thereof in general terms is insufficient.

2. The petition discusses *seriatim* the several matters contained in the published article complained of. In regard to the incident of the poisoned candy, it is alleged that "on or about the 24th day of April, 1908, she found a box of candy which had been placed upon the front porch of her residence, near her front door, and addressed to her; that the plaintiff, upon seeing said box, and not suspecting any harm therefrom, picked the same up, and after entering the house ate some of the said candy, which proved to have contained poison, which made the plaintiff sick, and by reason thereof she was detained at her home until Monday preceding the meeting of the said supreme executive council of the Supreme Forest Woodmen Circle, at which time she went to her office and resumed her duties, in the meantime having passed upon applications, as supreme physician, at her home; that the plaintiff did not know, had no means of knowing, and does not now know who it was that placed the said candy on the front porch of her home; that the statement contained in said article, wherein it is stated, 'Dr. Callfas is Silent on Case, Will not Talk about the Poisoned Candy,' relates to the incident mentioned above; and by the expression, 'and Alludes to Charge Against Her,' was intended to and does convey and mean that charges had been made

against the plaintiff arising out of her having been poisoned by eating some of the said candy which had been left on her porch as aforesaid; and by the statement, 'Shows the Effects of Strain and Refuses to Discuss any Details,' the defendant intended to and did convey the meaning that the plaintiff showed the effects of the strain arising from the eating of said poisoned candy, and that she refused to say anything in regard to the details thereof, and thereby carrying the implication that plaintiff had attempted to poison herself." The petition then continues with similar quotations from the published article and similar allegations in regard thereto.

If the published words are obviously defamatory, that is, libelous *per se,* it is not necessary in the petition to explain the meaning of the words nor to allege any special damages; the law implies damages. If the published words are ambiguous, or are meaningless unless explained, or *prima facie* innocent, but capable of defamatory meaning, it is necessary to specially allege and prove the defamatory meaning of the words used, and to allege and prove special damages. The plaintiff will not be allowed to prove upon the trial a different meaning than that which she has alleged. If the words, with the meaning alleged by the plaintiff, are not libelous, or if no special damages are alleged, the petition fails to state a cause of action. The petition and the publications complained of must be considered in the light of these well-established legal principles.

3. It is stated in the publication that plaintiff's husband had said that plaintiff had not had any practice as a physician. The defendant contends that publications of this character are not actionable because she was not engaged in the practice of her profession at the time the publications were made. Of course, if she had no professional character or standing at the time, there could be no damage in that respect. If she had abandoned her profession and no longer relied upon it as an occupation and means of support, she could not be damaged profes

sionally; but this does not appear to have been the situation. She had taken the prescribed studies, and had been admitted to practice, and had actually engaged in the practice, and had accepted an official position which none but a practicing physician could hold. This was not a permanent position, but was for a definite specified term. Her official position required her to continue to practice her profession while she held it. Under these circumstances, no doubt, a successful attack upon her professional standing would be a distinct injury. The statement published was that her husband had said that she had never practiced medicine. There are, however, no facts pleaded upon which any damages can be computed or based.

4. We have tried to state enough of the allegations of the petition to show generally the nature of the plaintiff's case. It was necessary that there should be allegations that the words used had a defamatory meaning, stating in direct language what the meaning was, and allegations of special damages sustained thereby. The meaning attributed by the pleading to the words used, where such allegation is attempted, is in no case obviously defamatory. Many of the facts charged are substantially admitted by the petition to be true. The published articles do not charge plaintiff with the commission of a crime, nor with any immoral act. There is no statement that, without addition or explanation, is libelous *per se,* that is, obviously defamatory; nor any statement of fact that would necessarily, without further explanation than is contained in the petition, cause plaintiff damages, that is, that could constitute a cause of action without a plea of special damages. There is no allegation in the petition of facts showing any special damages sustained. The most specific allegation of damages is at the end of the first count of the petition, as follows: "That by reason of the publication by the defendant of the foregoing false and libelous article, the plaintiff has been greatly injured and damaged in her social standing and relations, not only

with members of the order, but with others with whom she has been brought in contact, made the subject of sensational talk and comment and ridicule, as well as having been greatly injured and damaged in her professional standing in the order and in the community in which she lives, all to her great damage and injury in the sum of $10,000."

As early as 1877 this court was committed to the rule that, when the published words are not obviously defamatory, that is, not libelous *per se,* there can be no recovery, unless special damages are pleaded and proved. The rule was stated as follows: "But it is not every false charge against an individual which is sufficient to sustain an action for damages. In order to authorize a recovery the plaintiff must aver in his petition, and prove on the trial, that he has sustained some special damages from the publication of the alleged libel, unless the nature of the charge is such that the words are actionable *per se.* And where the words are not actionable *per se* it is not sufficient to simply allege that the party has sustained damages, but a party must state in his petition *wherein* he has sustained damages. * * * The petition entirely fails to show *how* the plaintiff was injured by the alleged libel, and the mere statement that she has sustained damages by the loss of friends, etc., where there is no statement of facts from which it is apparent that the defendant is liable for damages, will not sustain the action." *Geisler v. Brown,* 6 Neb. 254.

There being no allegation or proof of special damages in the case, no other judgment than the one entered was possible. It is therefore

AFFIRMED.