FRED W. FITCH, APPELLANT, V. DAILY NEWS PUBLISHING COMPANY, APPELLEE.

FILED FEBRUARY 13, 1928.   No. 25169.

*F. W. Fitch, Weaver & Giller* and *H. L. Mossman,* for appellant.

*Gurley, Fitch & West, contra.*

Heard before GOSS, C. J., DEAN, GOOD, THOMPSON and EBERLY, JJ., and PAINE, District Judge.

PAINE, District Judge.

On December 1, 1925, Fred W. Fitch, the appellant, who was the plaintiff in the lower court, brought this appeal from a dismissal of his action in the district court for Douglas county, Nebraska. The plaintiff, who was and is a practicing lawyer in the city of Omaha, brought an action for malicious and defamatory libel against the Daily News Publishing Company of Omaha, defendant in the court below and appellee in this court.

Plaintiff charged that the libelous article was published on the front page of the home edition of the Omaha Daily News upon July 13, 1922, under a six-column headline and

subheads, and that it was false, garbled, scandalous and sensational. He further charged that he had been injured in his good name, suffered mental pain and anguish, sickness and nervous prostration, as well as the loss of a portion of his practice as a lawyer, to his total damage in the sum of $50,000. Defendant admitted the publication, but alleged that the facts therein were contained in a petition for a divorce filed against plaintiff by his wife upon the same day; that the article was published in good faith, without malice, as a matter of general information, being a report of court records upon which a restraining order had been issued, by the district judge to prevent plaintiff from molesting his wife, and that there having been judicial action thereon it was privileged. The records further disclosed that on March 2, 1923, a divorce was granted to the plaintiff's wife upon some of the grounds of extreme cruelty set out in the published article.

The libel case was tried to a jury upon May 12, 1925, and all of the evidence of both parties taken. At the close of the trial the defendant asked that the action be dismissed for lack of sufficient evidence, or in the alternative that the court instruct a verdict in its favor on the ground that the article was a publication of a judicial proceeding and unqualifiedly privileged, and that no presumption of malice existed and no express malice had been proved, which motion was sustained by the court. Plaintiff then asked to be allowed to withdraw his rest and be allowed to introduce evidence of express malice, which request was denied.

1. As to the duty of a newspaper, Judge Anderson, in deciding a case in the federal court of Indiana, said: "I have had occasion to say before that a newpaper has a certain duty to perform. It was well stated by a former President of the United States that it is the duty of a newspaper to print the news and tell the truth about it. It is the duty of a public newspaper, such as is owned and conducted by these defendants, to tell the people, its subscribers, its readers, the facts that it may find out

about public questions, or matters of public interest; and it is its duty and its right to draw inferences from the facts known—draw them for the people." *United States v. Smith,* 173 Fed. 227.

Ordinarily, the right of a newspaper to comment or criticize in regard to public matters extends and is limited to that enjoyed by the public generally, and this is true whether the publication is in the form of an item of news, an advertisement, or correspondence. Defamatory matter published in good faith, in the honest belief in its truth, is not privileged if false because it was published as a matter of news. 36 C. J. 1272, 1273.

"The usual constitutional guaranty of the 'freedom of the press' does not secure to libelers immunity from civil or criminal prosecution, but is intended simply to secure to the conductors of the press the same rights and immunities, and such only, as are enjoyed by the public at large." 17 R. C. L. 349, sec. 95.

2. Many decisions have discussed the law relating to the headlines set out in the newspaper, and in the case on trial the headline, going across six columns and reading, "Claims He Suspected Imaginary Lover," is strongly objected to by the plaintiff.

The readers of newspapers have a right to expect that the bold headlines constitute a summary of the news to follow, but they are often lacking in this respect. It frequently happens that they mildly distort the account and offer an enticing bit of the article that is most sensational. Instead of being a short summary, they are just the paper's advertisement of its news to attract attention.

The decisions of our courts limit the use of headlines in two ways: First, by holding that libel may be found in the headlines; and, second, that the headlines are only privileged when they give a fair idea of the article which follows.

"The title or heading of a published article is a part thereof and must be considered in determining whether

the publication is libelous." 17 R. C. L. 350, sec. 97; *Dorr v. United States*, 195 U. S. 138.

"Courts have wisely held that the sting of libel is frequently contained in the headlines which are privileged only when they are a fair indication of a truthful report." *Brown v. Globe Printing Co.*, 213 Mo. 611, 127 Am. St. Rep. 627. And in this case the bold-type headings, which were fairly suggestive of the facts to be given below, are held to be within the rule announced.

3. As a general rule only the parties interested in a case are authorized to examine and receipt for the files in a case.

"In the English chancery it is held to be a contempt of court to publish a pleading of one party in a newspaper, or, it would seem, the whole proceedings, before the matter has come to be heard." *Cowley v. Pulsifer*, 137 Mass. 392. American courts do not go this far and generally hold that, in the publication of pleadings, newspapers must publish nothing libelous or stand ready to prove the truth of the charges made.

"One of the reasons why parties are privileged from suit for accusations made in their pleadings is that their pleadings are addressed to courts where the facts can be fairly tried, and to no other readers.

"If pleadings and other documents can be published to the world by any one who gets access to them, no more effectual way of doing malicious mischief with impunity could be devised than filing papers containing false and scurrilous charges, and getting those printed as news. The public have no rights to any information on private suits till they come up for public hearing or action in open court; and, when any publication is made involving such matters, they possess no privilege and the publication must rest on either nonlibelous character or truth to defend it." *Park v. Detroit Free Press Co.*, 72 Mich. 560.

4. "The publication in a newspaper of the contents of a petition for the removal of an attorney from the bar, filed in the office of the clerk of this court in vacation, but

which has not been presented to the court or entered on the docket, and which includes actionable allegations, unless justified, although the publication is a fair and correct report of the petition, is not privileged."

This is the syllabus of the decision entered by Judge Oliver Wendell Holmes in the Massachusetts case of *Cowley v. Pulsifer*, 137 Mass. 392. In this case, which has been often referred to as the leading case, Judge Holmes reviews many of the English cases and holds:

" 'Though the publication of such proceedings may be to the disadvantage of the particular individual concerned, yet it is of vast importance to the public that the proceedings of courts of justice should be universally known. The general advantage to the country in having these proceedings made public more than counterbalances the inconveniences to the private persons whose conduct may be the subject of such proceedings.'

"The chief advantage to the country which we can discern, and that which we understand to be intended by the foregoing passage, is the security which publicity gives for the proper administration of justice."

Therefore, when a bill has been filed in court and acted upon by the judge, it has been held that a publication of the contents of such bill, if it is a fair statement of the proceedings had, with an honest view of giving useful information to the general public, and will not tend to obstruct the course of justice or interfere with a fair trial, is then not a libelous publication, and this case is cited and discussed in the case of *Kimball v. Post Publishing Co.*, 199 Mass. 248, also a Massachusetts case, and it cites Lord Esher, who held that the publication after an *ex parte* application had been granted was a privileged report, and says: "If this were not so, then in the language of Lord Esher, 'the ridiculous result would follow that, where the trial of a case of the greatest possible interest lasted fifty days, no report could be published until it was ended.' "

While the evidence as given in the bill of exceptions in this case is not entirely free from doubt, yet it indicates

that the Daily News had a carbon copy of the petition for divorce which had been filed during the morning of the day of publication in the office of the clerk of the district court, and that the article claimed to be libelous had been set up in type so that it could be proof-read in crude form during the noon hour, but its publication was being held in abeyance until the restraining order was issued before it would be released for printing, and that it was actually released at 2:10 P. M. and appeared on the front page of the home edition of the Omaha Daily News which went to press at about 3 P. M. Neal Jones, the managing editor of the Omaha Daily News, testifying makes answer as follows: "I instructed the city editor to ascertain whether a restraining order had been issued in this case to determine whether or not this was merely a petition which might be filed and hurriedly withdrawn or whether it was in good faith, whether Mrs. Fitch really intended to carry out her action for divorce. When I learned that the suit was in good faith and was convinced that it was, and that the action would proceed, then I instructed them to run the article which appeared in the newspaper in evidence."

And the court concludes that Judge Sears had entered the restraining order at an *ex parte* hearing prior to the publication of the article in question, thereby under the rules set forth making the article in question privileged.

"It is not open to dispute that a fair report in a newspaper of pending judicial proceedings is proper, and that this privilege extends to all matters which have been made the subject of judicial proceedings, though such proceedings may be merely preliminary, or interlocutory, or even *ex parte*. For example, it will render privileged a fair report of the charges made in a bill in equity which has been presented to the court and upon which the court has acted by making an order that the defendants shall appear and show cause why an injunction shall not be issued against them." *Lundin v. Post Publishing Co.,* 217 Mass. 213; *Kimball v. Post Publishing Co.,* 199 Mass. 248, 19 L. R. A. n. s. 862.

"A publication in a newspaper of a report of preliminary proceedings before a justice of peace on a criminal charge, resulting in holding the party to bail or committing him for the action of the grand jury, when substantially correct, and made in good faith, and without malice, is entitled to the ordinary privilege accorded to reports of proceedings before courts of justice." *McBee v. Fulton*, 28 Am. Rep. 465 (47 Md. 403).

5. A newspaper publication, to be privileged as a publication of judicial proceedings, must be fair; that is, just, impartial, and free from animus against the party complaining; and it must be correct and accurate so as to give the public a reasonably correct statement of the matter involved. *Jones v. Pulitzer Pub. Co.*, 240 Mo. 200.

"Although a person may publish a correct account of the proceedings in a court of justice, if he discolors or garbles the proceedings or adds comments and insinuations of his own in order to asperse the character of the parties concerned, it is libelous." 17 R. C. L. 346 sec. 92.

A newspaper is allowed to make comments, draw deductions, and slightly add to court documents, if such inferences are fair, honest, and truthful deductions from the privileged proceedings, but of course it does not follow that a newspaper has permission to publish a lie at any time. We hold that the report of the divorce action was reasonably fair to the plaintiff, and printed in good faith, solely as a matter of news and of public interest.

The above is a brief discussion of the points of law involved in this case. Much of the evidence taken was directed to matters about which there was no dispute between the parties. The matter published was privileged, and the few comments and headlines, while not in good taste, were within the limits of the law as set forth above. The evidence for the plaintiff was in the opinion of the trial court so slight that a verdict for the plaintiff could not have been sustained, and we are satisfied that the trial court

was justified in disposing of the case by a dismissal, and the case is hereby

AFFIRMED.

Note—See Libel and Slander, 36 C. J. 1253 n. 60, 1272 n. 51, 55, 1274 n. 79; 32 L. R. A. 831; 17 R. C. L. 349; 3 R. C. L. Supp. 661; 40 A. L. R. 583; 17 R. C. L. 350; 5 R. C. L. Supp. 940; 6 R. C. L. Supp. 1009.