THOMAS H. WALKER, APPELLANT, V. BEE-NEWS PUBLISHING COMPANY, APPELLEE.

FILED FEBRUARY 10, 1932.   No. 28132.

*R. H. Olmsted,* for appellant.

*Kennedy, Holland & De Lacy, contra.*

Heard before GOSS, C. J., DEAN and PAINE, JJ., and BROADY and RHOADES, District Judges.

PAINE, J.

This is a libel suit, in which Thomas H. Walker, appellant, sought to recover $10,000 damages from the Bee-

News Publishing Company, of Omaha, appellee. The court, at the close of the testimony, and after each party had rested, sustained the motion of the appellee for a directed verdict.

Upon March 29, 1929, the Bee-News published in its home edition a large flashlight picture, reaching across four columns, showing a wrestling match in a barn loft. The picture shows some 40 people, including a number of girls, all much interested in the bout. The large-type headline above the picture reads: "Battle in Barn-Days of Old Live Again." In the half-column news write-up under the picture, we find this paragraph: "In Tom Walker's barn, west of Florence, two 'rasslers' rasseled it out Wednesday night. John Hodges of Tech. high, state heavyweight champ, took on John Sheppard, negro, who takes care of pots and pans at a downtown café." To attract attention to this unimportant event, a semi-ludicrous write-up described the meet, at which no admission was charged, and added: "The crowd had a swell time. It proved it by tossing, in the old-time way, $18.31 to the mat, which was divided between the pot massager and the high school student." This libel suit is brought because the reporter inadvertently was in error in stating that the event occurred in "Tom Walker's barn," whereas it was actually held in the barn of D. H. Walker, a few miles away. Appellant contends that said publication was wholly false, and injured appellant's good name and reputation as a citizen, husband and father, and subjected him to ridicule, ignominy and shame.

It is insisted that the large-type heading, heretofore set out, must first be considered, but we find nothing therein libelous. *Sheibley v. Nelson*, 75 Neb. 804; *Fitch v. Daily News Publishing Co.*, 116 Neb. 474.

1. 2. Where one's name is used by mistake, it has been held that there would be no right of action for libel, although the article would be libelous if it was intended to refer to him. Such was the holding in *Hanson v. Globe Newspaper Co.*, 159 Mass. 293, 20 L. R. A. 856. However,

in examining this case, which was decided in 1893, we find a very vigorous dissenting opinion of Justice Oliver Wendell, Holmes, then a member of the Massachusetts supreme court. The news article described the conduct of a prisoner under arrest, and named him as H. P. Hanson, a well-known real estate broker, of South Boston. The man who was actually under arrest and fined was A. P. H. Hanson. Justice Holmes, who was not alone in his dissent, insisted that, if an article should allege falsely that A murdered B with a knife, it would not be a very satisfactory answer to a question by A that the article was a description of the conduct of the murderer of B and was true concerning that murderer. He insists that the words used in the article describe the plaintiff, H. P. Hanson, and no one else, and, while the defendant did not intend them to apply to him, the question narrows down to whether such want of intention is enough to constitute a defense against an action for libel, and he cites many early cases from the English courts which hold that one is responsible for negligent wrongs, as well as for those which are intentional.

The leading English case upon this point appears to be *E. Hulton & Co. v. Jones* (1910) App. Cas. (Eng.) 20, 79 L. J. K. B. 198, 16 Am. & Eng. Ann. Cas. 166. E. Hulton & Co., owners of the Sunday Chronicle, in publishing an article concerning the crowds at a motor race at Dieppe, purported to describe the doings and behavior of various types of Englishmen abroad, and the defamatory portion of the article referred to Artemus Jones, a supposedly fictitious person, but there really existed a Mr. Artemus Jones, a barrister, who had in times past published articles over his name in this same Sunday Chronicle. He at once sued for libel, and a jury at Manchester returned a verdict of 1,750 L. (pounds) damages. On appeal, Lord Alverson, C. J., of the court of appeals, reached the same conclusion as Justice Holmes did in *Hanson v. Globe Newspaper Co., supra,* and affirmed the judgment. There being dissent, it was taken to the House of Lords, where, upon

December 6, 1909, it was held that, in an action for libel against the owners of a newspaper who published a defamatory article containing plaintiff's name, the fact that neither the writer of the article nor the editor of the paper had ever heard of the plaintiff, and had no intention of referring to him, and believed the name referred to an imaginary person, was no defense if the circumstances were such that persons who read the article would reasonably think that the language referred, not to an imaginary person, but to a real person, and that those among them who knew the plaintiff would reasonably suppose the language to refer to him.

In Colorado and Kansas cases, it was held: "The fact that neither the reporter nor anybody else connected with the newspaper knew the plaintiff is immaterial to the right to recover. * * * Intent is immaterial except as a part of express malice." *Switzer v. Anthony*, 71 Colo. 291. See *Hatfield v. Gazette Printing Co.*, 103 Kan. 513. Judge Pound, in a leading New York case, held that the fact that a publisher of libelous matter has no actual intention to defame a particular man, or to injure any one, does not prevent recovery of compensatory damages. *Corrigan v. Bobbs-Merrill Co.*, 228 N. Y. 58, 10 A. L. R. 662. See *Cassidy v. Daily Mirror Newspapers*, 2 L. R. K. B. (Eng.) 331, 69 A. L. R. 720.

As Lord Chief Justice Coleridge said in *Gibson v. Evans*, 23 Q. B. 384, it does not signify what the writer meant; the question is, whether the alleged libel was so published by the defendant that the world would apply it to the plaintiff.

An instruction in an action for libel that if, in a circular charging stealing, plaintiff's name "R. Laudati" was used instead of "N. Laudati" as the result of negligence merely, and not intentionally, plaintiff could not recover, was error, as defendant was liable if the accusation in effect applied to plaintiff, regardless of whom it was aimed at. *Laudati v. Stea*, 44 R. I. 303, 26 A. L. R. 450.

A newspaper item reporting arrest of "Harry Kennedy,

an attorney, 40 years old," for forgery, held libelous as to "Harry F. Kennedy," the only lawyer by that name in the district, and about 37 years of age, where the person in fact arrested was "Harry P. L. Kennedy," and from Detroit, though publisher intended to refer to "Harry P. L. Kennedy." *Washington Post Co. v. Kennedy,* 55 App. D. C. 162, 3 Fed. (2d) 207, 41 A. L. R. 483. . . .

3. Having reached the conclusion that the appellee is answerable for the publication in spite of the mistake, we will ascertain whether this article, published, as all agree, without any malice, can support a judgment for damages in favor of the appellant.

A publication is libelous *per se* which charges another with the commission of a criminal offense involving moral turpitude. *Pokrok Zapadu Publishing Co. v. Zizkovsky,* 42 Neb. 64.

It is contended by appellant that holding an unlicensed wrestling match, at which an admission is charged, or at which a prize or purse is given, is forbidden in this state, and is a crime. Comp. St. 1929, sec. 71-3101. While section 71-3103 provides that no private individual may receive a license therefor, yet it is a question whether it would be a violation of this statute to hold such a match where no part of the receipts were paid to any person except to the actual contenders and the officials.

In one of the earliest cases in the United States involving a charge of chastity, it was held: "In case the charge, if true, will subject the party. charged to an indictment for crime involving moral turpitude, * * * then the words will be in themselves actionable." *Brooker v. Coffin,* 5 Johns. (N. Y.) 188, 4 Am. Dec. 337. In discussing this case, the Iowa court held that to charge drunkenness was not slanderous *per se. Amick v. Montross,* 206 Ia. 51. See notes in 58 A. L. R. 1147, 1159, and 1162.

The published article did not charge that Thomas Walker promoted the match, or that he was present, nor even did it charge that he had knowledge of it, nor is it settled that the event was held in violation of law. Therefore, the

allegation that the article charged a criminal offense against Walker, involving moral turpitude, is not sustained.

4. · It is contended that the trial court erred in holding that the publication did not constitute libel *per se*. We have the advantage of having the memorandum opinion of the trial judge set out in full in the transcript. He compares the charge of being a thief, as set out in the majority opinion in *Iden v. Evans Model Laundry*, 121 Neb. 184, with the case at bar, and says: "There is nothing inherently wrong in holding a wrestling bout upon a farm, or nothing that would bring a person into public ridicule or contempt. * * * There isn't a person that knows Tom Walker that would believe anything wrong of him because of the publication of this article, or give it more than a passing thought and that of a humorous character. We think it comes within the rule laid down in *Lamberti v. Sun Printing & Publishing Ass'n*, 111 App. Div. (N. Y.) 437."

This case last referred to by the district judge involved a bit of horse-play, in which a diagram of a black hand in burnt cork was surreptitiously placed upon the back of Janitor Lamberti in the basement of the courthouse, in which he worked. His suit for libel against the New York Sun was based upon their publishing, with embellishments, his horror at the discovery of the ill-fated mark, in these words: "There must be a curse on me, a curse on me, I swear that mark was not there this morning. * * * Remove it from me, even if you have to cut off my flesh." Holding that the publication was not libelous *per se,* the New York court said that an actionable libel cannot be created out of nothing.

It is insisted that any publication injurious to the character of another is libelous *per se,* citing *Williams v. Fuller*, 68 Neb. 354. But in that case a judgment was affirmed in which the Riverton Review directly libeled its new town marshal by calling him "a pot-bellied, beer-guzzling old specimen of a degenerated race," which shows at once it is not in point in the case at bar.

In the case at bar, it is charged that the article blackens Tom Walker's character and tends to expose him to public ridicule, but in *Davis v. Meyer*, 115 Neb. 251, it was held that charging a woman with being "a half-breed Mexican" is not such a charge as subjects a person to public ridicule, ignominy or disgrace. This court is unable to agree with appellant that an article saying that two boys had a wrestling match in one's barn is sufficient to bring it within the law relating to public ridicule and defaming character. *Foster-Milburn Co. v. Chinn*, 134 Ky. 424; *Bigley v. National Fidelity & Casualty Co.*, 94 Neb. 813; *Williams v. Fuller*, 68 Neb. 354.

Words are libelous *per se* when they charge an offense which blackens one's character and exposes him to public ridicule, but the evidence in this case fails to sustain such a charge.

There being no error in the record, the judgment of the district court is

AFFIRMED.