AMANDA M. WILLIAMS ET AL. V. ED FULLER.*

FILED MARCH 18, 1903.  No. 12,642.

1. **Libel**: PUBLICATION LIBELOUS PER SE.  Any false and malicious writing published of another is libelous *per se*, when its tendency is to render him contemptible or ridiculous in public estimation, or expose him to public hatred or contempt, or deprive him of the companionship of respectable people.

2. ——: CIVIL LIABILITY.  The proprietor of a newspaper is civilly liable for a libelous article published therein, although such article be published without his knowledge.

3. **Pleading**: INNUENDO.  The office of an innuendo in pleading is to point out the meaning of words which are vague or indefinite in meaning or application; but where the words have definite and certain meaning and application, and thus taken are libelous, explanatory words or phrases, or innuendoes are not required.

4. **Damages**: EVIDENCE IN MITIGATION.  In an action for libel in this state, the recovery is limited to compensatory damages, and the

* Rehearing allowed.  Judgment below affirmed.  See opinion, p. 362, *post,*

defendant is not permitted to show, in mitigation thereof, that the publication was without his knowledge.

5. ————: EVIDENCE OF. Where the publication is libelous *per se*, the plaintiff is not required to introduce evidence of actual damage to entitle him to substantial damages.

6. **Tender of Proof.** No formal offer to prove is required, to obtain a review of a ruling of the trial court excluding the answer of a witness to a question, where the question itself clearly indicates what the party expected to prove by the witness.

ERROR to the district court for Franklin county: ED L. ADAMS, DISTRICT JUDGE. *Reversed.*

*A. H. Byrum* and *Andrew G. Wolfenbarger,* for plaintiffs in error.

*G. M. Caster, contra.*

ALBERT, C.

This is an action for libel. There was a verdict for the plaintiff, and judgment accordingly. The defendants bring error.

"The plaintiff complains of the defendant and for his cause of action, says:

"First. That he is and was on the 19th day of July, 1901, the duly appointed and acting village marshal of the village of Riverton, in Franklin county, Nebraska.

"Second. That the defendants are the owners and publishers of a newspaper known as the *Riverton Review,* which said newspaper is printed and published weekly in the said village of Riverton in said Franklin county, Nebraska.

"Third. That the defendant Amanda M. Williams is and was the publisher of the said *Riverton Review* on the 19th day of July, 1901; that the defendant Paris A. Williams is the editor of the said *Riverton Review,* being a weekly newspaper printed and published as aforesaid in the village of Riverton, Nebraska; and the said Gold Williams is a compositor in the office of said newspaper and is in

the employ of the said Amanda M. Williams and Paris A. Williams, publisher and editor respectively of the said newspaper, the said *Riverton Review.*

"Fourth. That the said *Riverton Review* is a newspaper published in Riverton, Nebraska, and is in general circulation in the village of Riverton, Nebraska, and in Franklin county, Nebraska.

"Fifth. That on or about the 19th day of July, 1901, the said defendants Amanda M. Williams, Paris A. Williams and Gold Williams, being respectively publisher, editor, and compositor of the said newspaper, the *Riverton Review,* wickedly intending to injure the plaintiff, did maliciously publish of and concerning this plaintiff a certain false, scandalous and defamatory libel in their said newspaper, the said *Riverton Review,* being a weekly newspaper printed and published by the defendants in the village of Riverton, Franklin county, Nebraska, which said false, scandalous and defamatory libel is in the words as follows, to wit:

"" 'Riverton's New Marshal. Yes, we have a new marshal. He's a peach; well, we should say so; no one else could be found who would have the place, so the present incumbent who was aching to show his authority took the job. It's a bright specimen of degenerated humanity who lives off his wife and the misdeeds of other men. If he wants a sack of flour now all he has to do is to arrest somebody. He never shows his authority on the gamblers and other members of his clique, but only shows it on people he knows are law-abiding. Why does he not arrest the lazy louts who are buying booze for boys as young as 14 years? No, this pot-bellied beer-guzzling old specimen of a degenerated race stands in with just this crowd. It is strange that our town board could not find a decent man instead of a lazy and dishonorable libertine. A man who would not hesitate to steal the coppers off a dead man's eyes. This man has been caught in numerous dirty deals, and is no more fit to be an officer than the poorest beast. He is without shame, honor, or humanity, as has been

shown in the past by his outrageous attack on a young man, who afterwards died.  Such a man has no right to live in a decent community, yet he is allowed to exist here. I wonder why?'

"Sixth.  By reason of the publication of the above-described false, scandalous and defamatory libel by the said defendants, Amanda M. Williams and Gold Williams and Paris A. Williams in their said weekly newspaper, *The Riverton Review,* on the 19th day of July, 1901, this plaintiff has been brought into public scandal and disgrace, and greatly injured in his good name, to his damage in the sum of $5,000."

A part of the defendants demurred to the petition generally, and on the ground of a defect of parties.  The latter appears to have been abandoned in the argument.  The court overruled the demurrer, and the ruling in that behalf is now assigned as error.  In support of that assignment, the defendants contend that the article is not actionable *per se.*  This contention is wholly without merit.  Any false and malicious writing published of another is libelous *per se,* when its tendency is to render him contemptible or ridiculous in public estimation, or expose him to public hatred or contempt, or hinder virtuous men from associating with him.  Cooley, Torts, *206; *World Publishing Co. v. Mullen,* 43 Neb. 126, 47 Am. St. Rep. 737.  That the language as set out in the petition, and alleged to have been published of and concerning the plaintiff, has that tendency, is too clear to admit of argument.

It is next urged that there is no allegation in the petition sufficiently alleging that the article complained of was published of and concerning the plaintiff.  This complaint is also unfounded.  The petition contains the positive averment, and leaves no room for doubt, that the article in question was published of and concerning the plaintiff. That being true, further allegations by way of inducement or colloquium would be superfluous and redundant.

It is next argued that the petition fails to point out the meanings of the words used in the libelous article.  If the

words used were of doubtful significance, or ambiguous; or were not sufficiently explained by the context, there would be much force in the argument on this point, but such is not the case. With the possible exception of one or two words, no one acquainted with our language can be left in doubt as to the meaning of the words employed. If those exceptions should be entirely disregarded, the article would still be libelous, and the petition good as against a general demurrer. The demurrer was properly overruled.

Upon the overruling of the demurrer the defendants answered, two of them joining in one answer, the other filing a separate answer. The plaintiff filed a motion to strike out portions of the answers, and one assignment of error is that the court erred in sustaining that motion. We are unable to find any order of the court sustaining that motion, and for that reason it cannot be considered. The defendants offered to prove, on behalf of the proprietors of the paper, that the article was published without their knowledge. The theory upon which this evidence appears to have been offered is that their lack of knowledge would go in mitigation of damages. The proprietor of a newspaper is civilly liable for a libelous article published therein, even though it be published without his knowledge or consent. *Storey v. Wallace*, 60 Ill. 51; *Detroit Daily Post v. McArthur*, 16 Mich. 447; *Andres v. Wells*, 7 Johns. (N. Y.) 260, 5 Am. Dec. 267. The defendants appear to recognize the foregoing rule, but argue that the evidence should have been received in mitigation of damages. In some states, where, in addition to compensating damages, the plaintiff is allowed punitive or exemplary damages, such evidence is admissible in mitigation of the latter, but not in reduction of actual or compensatory damages. In this state, however, the recovery is limited to actual or compensatory damages, and no punitive or exemplary damages are recoverable. Hence, such evidence, going only to damages which are not recoverable in this state, was properly excluded.

The court, at defendants' request, gave the following instruction:

"The jury are instructed that if you find from the evidence that the plaintiff's name was not mentioned in the article alleged to have been published in this case, you have a right to consider this fact in arriving at the amount of damages, in case you find for the plaintiff, and so far as any damages he might sustain by reason of said publication, would only extend in circulation, to such persons as were acquainted with him, both as Ed Fuller and as marshal of Riverton, and to such other persons as might afterwards become acquainted with him in both of these capacities."

The defendants claim that the verdict is contrary to this instruction, because there is no evidence showing that anyone knew the plaintiff both by name and as marshal of Riverton. The evidence shows that the plaintiff had resided in Riverton, where the paper containing the objectionable article was published and circulated, for some sixteen years; that he is a married man, his family consisting of seven persons; that he was appointed marshal of that village in the fore part of July, 1901, and the article in question was published on the 19th day of the same month. In the face of this evidence, we think the contention that there is no evidence that he was known to any person, both personally and in his official capacity, is wholly unfounded.

The defendants claim that the verdict is contrary to another instruction of the court, which limited the recovery to compensatory damages, and, in this behalf, urge that there is no evidence of any actual damages. The article is libelous *per se,* and in the absence of any evidence of damage the law presumes some damage, and it is for the jury, under proper instructions from the court, to determine the amount; nor are they limited to nominal damages. *Bee Publishing Co. v. World Publishing Co.,* 59 Neb. 713, 719, and cases there cited.

The defendants complain of an instruction, given by the court on its own motion, where the jury were instructed that the following portions of the article in question are libelous *per se:*

"It's a bright specimen of degenerated humanity who lives off his wife and the misdeeds of other men." "He never shows his authority on gamblers and other members of his clique, but only shows it on people he knows are law-abiding." "No, this pot-bellied, beer-guzzling old specimen of a degenerated race stands in with just this crowd." "It is strange that our town board could not find a decent man instead of a lazy and dishonorable libertine." "A man who would not hesitate to steal the coppers off a dead man's eyes." "This man has been caught in numerous dirty deals and is no more fit to be an officer than the poorest beast." "He is without shame, honor or humanity, as has been shown in the past by his outrageous attack on a young man, who afterwards died."

We think each of these sentences just quoted falls squarely within Judge Cooley's definition, hereinbefore given, of language which is libelous *per se.* But the theory of the defendants, if we understand it, is that words, to be libelous *per se,* must be sufficient of themselves to indicate the identical person to whom they apply, without any evidence *aliunde,* and that, as the words quoted in the instruction complained of are not of that character, they are not libelous *per se.* There is not a single authority cited that supports this theory, and we are well satisfied that none exists. It would be impossible to pen a libel in such a way that the party libeled could recover therefor without evidence, *aliunde,* showing that it was published of and concerning him. Even were he pointed out by name, it would still be necessary for him to prove that the name was his. The theory is wholly untenable.

Complaint is made of certain rulings of the court whereby evidence tending to show the truth of the article, and that it was published with good motives and for justifiable ends, was excluded. The plaintiff contends that such evidence was inadmissible under the pleadings. It is alleged in the answer that "the matters and things, and the statements made therein [in said article] are true," and that "said article was printed with good motives, and with-

out malice toward the plaintiff, * * * and for good and justifiable ends." The plaintiff insists that the answer should have been more specific to warrant the admission of the testimony under consideration. We are not called upon, at this time, to state just how specifically a party is required to plead such facts. The remedy for failure to plead specifically is by motion for a more specific statement. No such motion was made, and the plaintiff, having elected to join issue on the facts as they were alleged in the answer, must be held to have waived his right, if any he had, to a more specific statement. Under the pleadings, as they stand, the defendants had a right to prove the truth of the matters contained in the publication, and the motives with which, and the ends for which, it was published.

But it is urged by the plaintiff that the record shows no offer to prove such facts. The rule requiring a formal offer to prove, in order to obtain a review in the appellate court of a ruling by which evidence is excluded, is of doubtful value at best; it is a matter of grave doubt whether its application does not more frequently defeat than promote justice, and retard, rather than expedite, its administration. The reason generally assigned for it is that such offer challenges the attention of the trial court to the nature and character of the evidence sought to be introduced, and enables it to rule on the objection interposed advisedly. We are not disposed to extend the rule beyond the reason underlying it. In this case, the questions propounded clearly indicate what the defendants expected to establish by the answers thereto. Under such circumstances, it would have savored of an insult to the intelligence of the court to make an offer showing what the defendants expected to prove by the witnesses. To enforce the rule, under such circumstances, would be absurd. We think the evidence was improperly excluded, and that the defendants were thereby deprived of a constitutional and statutory right. Constitution, art. 1, sec. 5; Code of Civil Procedure, sec. 132; *Larson v. Cox, ante,* p. 44.

It is recommended that the judgment of the district court

be reversed, and the cause remanded for further proceedings according to law.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed, and the cause remanded for further proceedings according to law.

REVERSED AND REMANDED.

The following opinion on rehearing was filed October 21, 1903:

1. **Assignment of Error Too General.** An assignment that "the court erred in excluding from the testimony proof as to the truth of the article and the charges made therein," is too general and indefinite to be entitled to consideration where a portion of the testimony offered upon the subjects mentioned was rightly excluded.

2. **Pleading:** INCONSISTENCY: EXCLUSION OF EVIDENCE. The answer in an action for libel alleged, among other things, that the article complained of was not published of or concerning the plaintiff, and that it was true. *Held,* That these allegations must be construed so as to be consistent, and hence that evidence that the charges contained in such article were true of the plaintiff was properly excluded.

POUND, C.

The facts are fully and accurately stated in the former opinion. Upon re-examination we are fully in accord with that opinion upon substantially every question passed upon therein. But our attention has been called to two further points, which do not seem to have been brought sufficiently to the notice of the court at the former hearing, and escaped attention. The petition in error contains twelve assignments. Of these, eleven are clearly insufficient to raise any question whatever for review. The remaining assignment is that "the court erred in excluding from the testimony proof as to the truth of the article and the charges made therein." In view of the fact that at least a portion of the testimony offered with respect to the truth of the article and the charges therein made was rightly excluded upon points of practice, and that this assignment is not

confined to the remainder but seeks to strike at some seventy different questions contained at different points of a large record, we think it is entirely too general and indefinite to be entitled to consideration. *Eagle Fire Co. v. Globe Loan & Trust Co.,* 44 Neb. 380; *Chicago, St. P. M. & O. R. Co. v. Lagerkrans,* 65 Neb. 566, and cases cited.

Moreover, upon the merits, we think the testimony offered in justification was rightly excluded. We do not think that this was a case for a motion for more specific statement, nor that the plaintiff joining issue on the answer, without requiring a more definite statement, waived his right to insist that the particular portions of the answer in question were insufficient to serve as the foundation for evidence as to the truth of the article with respect to the plaintiff. The answer, among other things, denies that the libelous article "was published of and concerning the plaintiff," and then proceeds to allege that it was true. The several allegations of a pleading must be construed so as to make them consistent, if possible. If we accept the allegation that the charge was not published of and concerning the plaintiff, or, in other words, that it did not refer to him, we must construe the allegation that it was true as meaning that it was true of the person of and concerning whom it was published, which would be some other person than the plaintiff. The case is on all fours with *Shanks v. Stumpf,* 51 N. Y. Supp. 154. While this is the decision of an inferior court, it is based on sound reason and commends itself to us as a correct exposition of the law. We are therefore of opinion that the trial court was right in refusing to admit the evidence offered, and that the judgment should be affirmed.

DUFFIE and KIRKPATRICK, CC., concur.

By the Court: For the reasons stated in the foregoing opinion it is ordered that the former judgment of this court be vacated and the judgment of the district court be

AFFIRMED.