NICHOLAS F. THORMAN, APPELLANT, V. ANDREW BRYNGEL-
SON, APPELLEE.

FILED JUNE 10, 1910. No. 16,083.

1. Libel and Slander: PROVINCE OF COURT AND JURY. In an action for
slander it is for the court to decide in the first instance whether
the alleged defamatory language used was slanderous *per se* if it
were susceptible of the meaning attributed to it by the plaintiff
in his petition, but for the jury to say whether the defendant by
the use of the language intended to convey the idea to those who
heard him that plaintiff was guilty of the crime alleged to have
been committed and to so charge him.

2. ————: QUESTION FOR JURY. It was alleged in the petition, with
proper innuendo, that defendant asked plaintiff in the presence
and hearing of other persons if he stole corn, stating that his
(defendant's) corn had been stolen, whereupon plaintiff asked
defendant if his meaning was to charge him with the crime of
stealing the corn, when defendant answered, "I mean just what
I say," and plaintiff again inquired if defendant meant to accuse
him of stealing the .corn, when defendant answered, "There is
very strong evidence that you *did*." Language charging one, in
the presence of others, with stealing corn is actionable *per se* as
matter of law. As to whether, by the language used (if so used),
defendant intended to charge plaintiff with the crime of stealing
corn is a question of fact to be decided by the jury.

3. ————: PETITION. A petition, the charging part of which is set
out in the opinion, is *held* to state a cause of action, and that
a general demurrer thereto was improperly sustained.

APPEAL from the district court for Cuming county:
GUY T. GRAVES, JUDGE. *Reversed.*

*A. R. Oleson,* for appellant.

*Hunker & Krake, contra.*

REESE, C. J.

This is an action for slander, instituted in the district
court for Cuming county. The body or charging part of
the petition is as follows:

"(1) Your said plaintiff is a resident and inhabitant

of the county of Cuming, in the state of Nebraska, living near Wisner, in said county, where he has resided for a number of years last past; that he is a farmer by occupation, but is not the owner of land but is a renter of land.

"(2) That on the 16th day of December, 1908, the said defendant, wickedly intending to injure the plaintiff in his good name and reputation, accosted the said plaintiff in the village of Wisner, Nebraska, in the presence of divers and numerous persons and in their hearing, falsely and maliciously did speak and publish of and concerning the said plaintiff false and defamatory words as follows: 'Say, Nick (meaning this plaintiff), do you (meaning this plaintiff) steal corn?' That when said defendant accosted your said plaintiff in that manner, your said plaintiff considered that the said defendant was joking, and that he thereupon jokingly replied that, 'Yes, I steal corn every day if I can.' That the defendant thereupon continued and your said plaintiff then observed that the said defendant was angry and was not joking nor jesting in the manner as plaintiff first supposed; that said defendant thereupon said, 'Well, we had some corn stolen' (meaning thereby that he and his brother had had some of their corn stolen); that your said plaintiff replied, saying, 'Well, you (meaning defendant) don't mean to say that I stole your corn, do you?' That defendant then replied to said plaintiff, saying, 'I mean just what I say,' to which your said plaintiff replied, saying to said defendant, 'Andrew (meaning defendant), you (meaning defendant) don't accuse me of that, do you?' That thereupon the said defendant replied, saying, 'There is very strong evidence that you (meaning plaintiff) did.' That all of his conversation and false and defamatory charges were made by said defendant of and concerning plaintiff in a public and angry and insolent manner in the presence and hearing of divers persons who understood the same, and that by the words aforesaid the said defendant then and thereby publicly charged the said plaintiff with stealing corn from their premises; that said charge was wholly

false and unfounded and was so spoken and published by the said defendant to the great and lasting injury of your said plaintiff."

To this petition defendant filed a general demurrer, which was sustained by the court, and, plaintiff electing to stand upon his petition as filed, the action was dismissed at his costs, and from which he appeals, contending that the court erred in holding that the averments of the petition do not state a cause of action. It is to be regretted that the law of the case has not been as well briefed as the importance of the question would seem to demand, not a single authority being cited by the appellee in support of the ruling of the district court. Stripped of all verbiage and innuendo, the conversation between the parties was as follows: Defendant: "Say, Nick, do you steal corn?" Plaintiff: "Yes, I steal corn every day if I can." Defendant: "Well, we had some corn stolen." Plaintiff: "Well, you don't mean to say that I stole your corn, do you?" Defendant: "I mean just what I say." Plaintiff: "Andrew, you don't accuse me of that, do you?" Defendant: "There is very strong evidence that you did."

The question arises: What would the bystanders, alleged to have been present and in hearing, understand from the language used, giving it its common and ordinary meaning, that defendant meant by the words uttered? Did he intend in this way to charge plaintiff with the stealing of his corn? If he did, the language would probably be actionable *per se*. If not, if the language was not susceptible of that meaning, when considered as above indicated, it would not. It is alleged that defendant stated he had had corn stolen, and there was very strong evidence that plaintiff was guilty of the theft. Was this equivalent to a direct charge that plaintiff was the guilty party? The rule seems to be that it must appear: "(1) That some *act* was imputed by the defendant; (2) that such act is of a *criminal* or indictable *nature;* and (3) that it was meant to be imputed to the *plaintiff.* The imputation of an act may be inferred, although the terms of

the communication be indirect, and although the act imputed be, in legal strictness, impossible." Starkie (Folkard), Slander and Libel (4th Eng. ed.) sec. 56. In the succeeding section the author, in discussing the subject, "From what words a criminal act is to be inferred," says: "Wherever words are used calculated to impress upon the minds of the hearers a suspicion of the plaintiff's having committed a criminal act, such an inference may and ought to be drawn, whatever form of expression may have been adopted. * * * Where the terms of a communication are indirect, the imputation of an act committed may be inferred where the defendant expresses a *suspicion,* or *opinion,* or *institutes a comparison,* or delivers the words as matter of *hearsay,* or by way of *interrogation* or *answer,* or *exclamation,* or uses *disjunctive* or *adjective* words, or speaks *ironically,* or, in general, where the statement virtually includes or assumes the commission of the principal act, or a strong suspicion of it." (The italics are the author's.) And in all such cases the question whether the words were used maliciously and with intent to defame is for the determination of the jury.

In 25 Cyc. 294, it is said in the text: "As a general rule to charge one orally with the crime of larceny is actionable *per se.* In order to be actionable *per se,* however, it is not necessary that the words spoken should by themselves constitute a technical charge of crime or that there should be a directly affirmative charge; it is sufficient if the words would naturally and presumably be understood by the hearers as charging the crime of larceny"—citing a number of cases. By the same authority, on page 542, it is said: "It is the province of the court to determine what constitutes libel or slander abstractly. Hence, if the language is plain and unambiguous, it is a question of law whether or not it is libelous or slanderous. But if the language is ambiguous and susceptible of two meanings, one defamatory and the other not, it is for the jury to decide in what sense it was used. However, it is for the court to determine whether or not the language on its

face is capable of a double meaning and should be submitted to the jury for construction. It is the duty of the court to say whether a publication is capable of the meaning ascribed to it by the innuendo. But when the court is satisfied of that, it must be left to the jury to say whether the publication has the meaning so ascribed to it"—citing cases.

There can be no question but that defendant stated that his corn had been stolen; in short, that a crime had been committed. This, the court must hold, would be slanderous, if the defendant intended to charge that plaintiff was the guilty party and so intended for the bystanders to understand. As to whether he did so intend, the charge not being made in direct terms, is a question of fact for the decision of the jury. Townshend, Slander and Libel (4th ed.) sec. 281. See, also, *Alcorn v. Bass*, 17 Ind. App. 500. It is not deemed necessary to multiply citations upon this part of the case.

The judgment of the district court is reversed and the cause is remanded for further proceedings.

REVERSED.