EDITH HUDSON, APPELLEE, V. EDWARD A. SCHMID ET AL., APPELLANTS.

272 N. W. 406

FILED APRIL 8, 1937. No. 29857.

*Flansburg, Lee & Sheldahl,* for appellants.

*Lloyd E. Chapman, contra.*

Heard before GOSS, C. J., DAY, PAINE and CARTER, JJ., and TEWELL and YEAGER, District Judges.

YEAGER, District Judge.

In this case, Edith Hudson, plaintiff and appellee, instituted action against Edward A. Schmid and the Iowa-Nebraska Light & Power Company, a corporation, defendants and appellants, to recover damages for slander. Plaintiff

based her right of recovery on certain statements which she alleged were, on or about the 24th day of April, 1935, made to her and in the presence of others by the appellant Edward A. Schmid, who at the time was engaged in the business of the Iowa-Nebraska Light & Power Company, a corporation, the other appellant.

The statement of the case to the extent necessary to a determination of this appeal is as follows: A petition was filed wherein plaintiff substantially set forth that at the time in question she was living at 811 Otoe street, Lincoln, Nebraska, with her parents; that on the date mentioned the defendant Edward A. Schmid came to the residence, and while there and while acting within the scope of his employment as an employee of the Iowa-Nebraska Light & Power Company, a corporation, made certain. maliciously false and defamatory statements to the plaintiff and in the presence of Matilda Hudson, Davie Hudson and Jesse E. Shuff. That portion of the alleged statements with its innuendo pertinent to this inquiry is as follows: "We know you (referring to this plaintiff) have had a jumper on there and we are going to have you arrested (meaning that this plaintiff had been stealing electric current from the defendants and that she would be arrested)." The portions of the foregoing quotation in parentheses are set forth in the petition and instructions as innuendo. The defendants filed answers in which they denied the making of the alleged statements and further denied that the alleged slanderous words were in fact false and defamatory or that they were falsely made. On the issues being joined, a trial was had to a jury, which resulted in a verdict and judgment in favor of plaintiff and against the defendants for the sum of $500. From this judgment the defendants have appealed.

As grounds for reversal of the judgment of the district court, the appellants have set forth four assignments of error. We, however, find it necessary to discuss only the third assignment. This assignment deals with the question of whether or not the trial court was in error in the

giving of instruction No. 5. In the examination of this instruction it becomes necessary to examine also instruction No. 1. In instruction No. 1 the court limited the jury to a consideration only of the words: "We know you have had a jumper on there and we are going to have you arrested." This limitation is again found in instruction No. 5. No fault is found, nor could properly be found, with the limitation.

The complaint is directed at the following language used in instruction No. 5, wherein the court told the jury that the words hereinbefore quoted were libelous *per se*: "The words claimed to have been used, as set out in paragraph one hereof, are slanderous *per se*." It is the contention of appellants that the words which the court submitted were not slanderous *per se* and that as a necessary consequence, under her pleadings, the appellee, not having alleged any special damage, was not entitled to recover.

Appellants contend that this case comes within the application of the rule that, where an innuendo is necessary to make the meaning of alleged slanderous statements clear and understandable, such statements are not slanderous *per se. Kee v. Armstrong, Byrd & Co.*, 151 Pac. (Okla.) 572; *Callfas v. World Publishing Co.*, 93 Neb. 108, 139 N. W. 830; *Hays v. Mitchell*, 7 Blackf. (Ind.) *117; *Carter v. Andrews*, 16 Pick. (Mass.) 1. For the purpose of determining this question, it is necessary to examine the language which the court informed the jury was slanderous *per se*. The particular word upon which this examination must center is "jumper." Is the word in the sense used either alone or accompanied by a threat of arrest capable of being naturally and presumably understood as a charge of crime? If it is not so naturally and presumably capable of being understood by the hearers as a charge of crime, then the language so defined by the court was not slanderous *per se*. 36 C. J. 1151; *Kee v. Armstrong, Byrd & Co., supra; Central of Georgia Ry. Co. v. Sheftall*, 118 Ga. 865, 45 S. E. 687; *Shaw Cleaners & Dyers v. Des Moines Dress Club*, 215 Ia. 1130, 245 N. W. 231; *Owens v. Clark*, 154 Okla. 108, 6

Pac. (2d) 755; *Hays v. Mitchell, supra; Carter v. Andrews, supra.*

It is urged that the utterances of the language complained of amounted to a charge that appellee had been guilty of stealing or had been guilty of larceny of electric current. An examination of texts on the subject and reported cases does not disclose any case where the particular term has been employed. However, there are a number of cases wherein certain words are discussed with reference to whether or not, in the use to which they were put, they imported libel or slander *per se. Hays v. Mitchell, supra,* was an action for slander. In that case, the particular language which was the basis of the action was as follows: "You hooked my geese." The trial court instructed that the language was actionable *per se.* On review the court said: "We think this instruction was erroneous. The common and ordinary meaning of the word 'hook' is not steal; nor does its connection with the rest of the sentence naturally give it that signification or any other criminal meaning. Words not actionable in themselves may express a criminal charge by reason of their allusion to some extrinsic fact, or in consequence of being used and understood in a particular sense different from their natural meaning, and thus become actionable. And when such is the case, it is as necessary to prove the extrinsic fact, or the particular and offensive sense in which the words were used, as it is to establish the words themselves. The charge of the court was in violation of this principle."

In *Carter v. Andrews, supra,* also an action for slander, the basis for the action was the words, "We offer these books under a disadvantage, for the library has been plundered by Deacon James G. Carter of this town." In passing on the question of whether or not the language was slanderous *per se* the court said:

"The most common meanings of this term, to plunder, is to take property from persons or places, by open force, and this may be in a course of lawful war, or by unlawful hostility, as in the case of pirates or banditti. But in an-

other and very common meaning, though perhaps in some degree figurative, according to the general tendency of men to exaggerate and apply stronger language than the case will warrant, it is used to express the idea of taking property from a person or place, without just right, but not expressing the nature or quality of the wrong done. Like many such terms, as pillaging, rifling, pilfering, embezzling, swindling, peculation, and many other like ambiguous terms, which have not acquired, either in law or philology, a precise or definite meaning, they express the idea of wrongful acquisition, but not the nature of the wrong done."

It becomes apparent, in the light of precedent and authority, that the statement alleged to have been made to appellee herein did not, in and of itself, have the force and effect of an accusation of crime and more particularly an accusation of larceny.

It is contended that the threat of arrest accompanying the charge of possession of a "jumper" amounts to a slander *per se.* With this contention we cannot agree. Assumsuming that the language complained of expresses the idea of wrongful acquisition, it does not express or even suggest the nature of the wrong done. Words to be slanderous *per se* must not only convey the expression of a wrong which is actionable, but also the nature of the particular wrong. *Carter v. Andrews, supra.* The language singled out by the court in instruction No. 5 does not meet this test.

Unless the language complained of is slanderous *per se,* and we have concluded that it is not, appellee is not entitled to recover on the basis of the record, since in the petition no special damage is alleged. In the case of *Callfas v. World Publishing Co., supra,* the rule is laid down that, if published words are ambiguous or are meaningless unless explained, or are *prima facie* innocent, but capable of defamatory meaning, it is necessary to specially allege and prove the defamatory meaning of the words used, and to allege and prove special damages.

The language quoted in instruction No. 5 not being slanderous *per se,* and the plaintiff and appellee not having alleged in her petition any special damage, it therefore becomes necessary to reverse the judgment and remand the cause to the district court for further proceedings in conformity with the decision herein.

REVERSED.