MICHAEL J. BARRY, APPELLANT, v. CLARENCE L. KIRKLAND, APPELLEE.

32 N. W. 2d 757

Filed June 18, 1948. No. 32446.

*James P. Keenan* and *Michael J. Barry,* pro se, for appellant.

*Schall, Robinson, Hruska & Garvey* and *Charles A. Nye,* for appellee.

Heard before SIMMONS, C. J., PAINE, CARTER, MESS-MORE, YEAGER, CHAPPELL, and WENKE, JJ.

MESSMORE, J.

This is an action at law whereby the plaintiff seeks to recover damages based on acts and spoken words by the defendant in a public auditorium at a public forum in the city of Omaha, Nebraska, and his acts in connection with a broadcast of said words spoken at the public meeting. The only question before this court is that of whether or not the petition states a cause of action.

The portion of the petition necessary to be examined in order to determine whether or not it states a cause of action, is as follows: Plaintiff's petition alleges that he is engaged in the business of selling books, both wholesale and retail, chiefly to public schools and to public libraries throughout the state of Nebraska and states contiguous thereto and beyond, and in all territory considered a part of the trade territory of Omaha, Nebraska; that during the conduction of his book business the plaintiff earned a livelihood except and until acts hereinafter set out as being acts of defendant were committed; that on June 9, 1946, there was held at a public auditorium in the city of Omaha, Nebraska, a meeting in the nature of a public forum, attended by a large audience. A person in the audience propounded the following question to the defendant: "Questioner: 'Mr. Kirkland, is it true that a local book seller is trying to bring court action against the school authorities, including the school board, because text books are not

bought on the basis of the lowest bid; in other words, because they are bought from book sellers who do not give the school district the benefit of the full discount that could be given and that other parts of the laws regarding the purchase of text books are not followed.' Mr. Kirkland: 'Well, I believe that you do have a point there; however, I am not prepared to answer it in full. I do recall some months ago, before Dr. Corning left to go to Washington, that a book seller here in Omaha brought suit against him personally for his not having purchased some of his books. Then, Mr. Corning was able of course to avoid having that served on him and now this book vender, I don't know who he is, is threatening to sue each of the board members individually, the school district collectively, and he might even get some of the students involved on a book or two or a series of books that he has to sell. That's always the case when you're buying anything. It is true that because of our present rather impoverished condition we always try to buy the lowest bid. Now we usually mean the lowest bid consistent with what the commodity is that we are purchasing. And there might be times when certain books are specified by the educational committee or by the school district and it becomes mandatory to buy that book, and that book might be a little bit higher priced. I'm a member of the building and site committee and very often we're hard put whether to buy a certain stoker, or a certain metal or certain equipment even though the price is lower. However, I am not able to answer your question other than to say that I do know that there is some such a suit pending - I do not know the details.' "

The next evening, June 10, 1946, the above meeting was, in part, broadcast upon the ether and over the air from a radio broadcasting station in the city of Omaha, and the above words of the questioner and the defendant were so broadcast as set out above; that the defendant well knew, and persons in the audience well knew, that

in his speaking of a "book seller here in Omaha" and "this book vender", he was speaking of the plaintiff. The statements of the defendant were false and wrongfully stated, and the defendant thus directly, by inference and otherwise, held plaintiff to public scorn and contempt and by said words used wrongful means to injure the plaintiff, to injure his business, to injure his standing as an honorable active member of the Nebraska Bar Association, and by and through said wrongful means was improperly and falsely publicly speaking of pending legal actions brought by the plaintiff as a taxpayer, based on violation of statutory law in the purchase of text books by the Omaha public schools; the defendant as a member of the school board was made a defendant in the taxpayers' suit. The defendant well knew that a transcription of his remarks was in fact made for the purpose of broadcasting to the public over a radio station; that the defendant possessed personality as a speaker and was a prominent citizen, lending the words spoken greater significance than the conclusion justified by the words themselves; and that, by reason of the aforesaid slanderous acts of the defendant, the plaintiff has been damaged.

The defendant demurred to the plaintiff's petition on the ground that it failed to state a cause of action. The trial court sustained the demurrer and gave the plaintiff ten days in which to amend his petition. The plaintiff elected to stand upon the petition, and his petition was dismissed. From this order he perfected his appeal to this court.

For convenience the appellant will be referred to as the plaintiff and the appellee as the defendant.

The plaintiff predicates error on the court's ruling sustaining the demurrer, contending that the acts and words spoken by defendant, as set out in the plaintiff's petition, at a public meeting and transcribed for radio broadcasting and later broadcast by a radio station, were slanderous, libelous, and actionable.

It might be stated at the outset that it is apparently the plaintiff's·contention that the words spoken by the defendant in answer to the questioner, as alleged in the plaintiff's petition, constituted slander. It is further apparent, although not stated in the petition, that the broadcasting over the radio station of the question and the answer thereto where the same had been transcribed is based on libel as a defamatory writing. See Sorensen v. Wood, 123 Neb. 348, 243 N. W. 82, 82 A. L. R. 1098.

The rule is that any language the nature and obvious meaning of which is to impute to a person the commission of a crime, or to subject him to public ridicule, ignominy, or disgrace, is actionable of itself. See, World Publishing Co. v. Mullen, 43 Neb. 126, 61 N. W. 108, 47 Am. S. R. 737; Williams v. Fuller, 68 Neb. 354, 94 N. W. 118; Sheibley v. Huse, 75 Neb. 811, 106 N. W. 1028; Nelson v. Rosenberg, 135 Neb. 34, 280 N. W. 229.

An examination of the alleged slanderous and libelous statements reveals the fact that they do not charge the plaintiff with criminal misconduct, nor subject him to public ridicule, ignominy, or disgrace within the meaning of the rule applicable to this class of cases. They do not in any way reflect upon his honesty, his integrity, or his ability as a lawyer or a tradesman in selling books.

The general rule is that mere words of general abuse and vituperation, however opprobrious, ill-natured or vexatious, whether written or spoken, do not constitute a basis for an action for defamation, in the absence of an allegation of special damages. See Dalton v. Woodward, 134 Neb. 915, 280 N. W. 215.

The words spoken, as set forth in the plaintiff's petition and alleged to have been transcribed and broadcast over a radio station, not being defamatory, and there being no allegation in the petition from which it can be found that the plaintiff has suffered special damages for which the defendant is liable, the judgment rendered by the district court in sustaining the defendant's demurrer to the plaintiff's petition and dismissing the

plaintiff's cause of action, was the only possible judgment. See Callfas v. World Publishing Co., 93 Neb. 108, 139 N. W. 830.

AFFIRMED.