FIRST BAPTIST CHURCH OF MAXWELL, NEBRASKA, APPELLEE,
v. STATE OF NEBRASKA, DEPARTMENT OF ROADS, APPELLANT.
135 N. W. 2d 756

Filed June 18, 1965. No. 35920.

Clarence A. H. Meyer, Attorney General, Harold S. Salter, Warren D. Lichty, Jr., and James F. Petersen, for appellant.

Beatty & Morgan and Leonard P. Vyhnalek, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, BROWER, SMITH, and McCOWN, JJ.

WHITE, C. J.

This is an action in eminent domain against a church property in Maxwell, Nebraska. In order to straighten a state highway that formerly jogged at right angles, the State condemned one-half of the church parking lot (80 feet x 148 feet), so that the new road ran diagonally from the northwest corner to the southeast corner of the lot. The church was located on a lot of the same size immediately to the west. The church also owned a lot immediately to the south of the one from which the diagonal strip was taken. The taking was on March 18, 1961. The amount of land actually taken was 0.14

acres. About 10 cars could be parked in the lot after the taking and about 28 before the taking. The jury found the value of the diagonal strip taken as $200 and found the difference in value of the remainder before and after the taking as $10,750. The court made the computation from the special findings of the jury and entered judgment for $10,950. The State appeals. The sole question presented on appeal is the sufficiency of foundation and the competency of two of the church's witnesses, Frank Christensen and Loren Hall.

Christensen and Hall are both lay witnesses, are long-time members of the church, and are farmers living near Maxwell. Christensen had been an officer of the church. The church is situated in the village of Maxwell, was built in 1905, was originally a cement block structure, was remodeled between the years 1947 to 1953, and both Christensen and Hall helped in the remodeling. The building was extended to the south, new floors were installed, the outside was finished in brick veneer, and other changes were made. Christensen, over objection, testified as to the cost of remodeling as being $44,281.06 between the years 1947 and 1953. Both Christensen and Hall attend church and are familiar with the physical structure of the property. There is no evidence in the record that they are acquainted with the state of the real estate market, or with the market value of properties in the vicinity, or have any further foundation for their testimony, other than their membership and familiarity with the property. Hall was not interrogated as to whether he had a knowledge of real estate or market values of property in the area, and Christensen, when asked if he kept track generally of values, answered, "Not very much." There is no evidence that either Christensen or Hall were property owners.

We have said many times that a resident owner who is familiar with his property and knows its worth may testify as to value without further foundation. Lans-

man v. State, 177 Neb. 119, 128 N. W. 2d 569; Missouri Pacific Ry. Co. v. Coon, 15 Neb. 232, 18 N. W. 62; Johnson v. City of Lincoln, 174 Neb. 837, 120 N. W. 2d 297; Chicago, R. I. & P. Ry. Co. v. Buel, 56 Neb. 205, 76 N. W. 571; Schmailzl v. State, 176 Neb. 617, 126 N. W. 2d 821.

Membership in the church does not bring these witnesses into a relationship with the property so they may testify as to valuation without foundation. An officer or president of a corporation is not an owner of property belonging to the corporation in the sense of the word when applied to an individual owner. There is no presumption in his favor as in the case of an individual owning property, and in order to qualify he must be shown to be familiar with the property and have such a knowledge as to qualify him to testify because of his knowledge of values generally in the vicinity. Omaha Loan & Trust Co. v. Douglas County, 62 Neb. 1, 86 N. W. 936. We come to the conclusion that membership in the church does not qualify them to testify as to the value of the church without further foundation.

Our cases have permitted considerable latitude in the admission of lay testimony as to valuation. See, Medelman v. Stanton-Pilger Drainage Dist., 155 Neb. 518, 52 N. W. 2d 328; Whalgren v. Loup River Public Power Dist., 139 Neb. 489, 297 N. W. 833; Johnson v. City of Lincoln, *supra*. But, a jury verdict in an eminent domain case may not be based on conjecture and speculation derived from opinion evidence as to valuation without any foundation. It is clear that some foundation must be laid for a lay witness to testify and his opinion must have some basis on which he can make an intelligent estimate of the value of the property. This, generally, as appellee points out, must be based on his *knowledge of the property* and *his knowledge of values*.

The proper rules are comprehensively stated in Evans v. State, 176 Neb. 156, 125 N. W. 2d 541, as follows: "It is the general rule that a witness need not be an expert

to testify to the value of land. Market value is not a question of science or skill upon which experts alone may give an opinion. Illinois Power & Light Corp. v. Talbott, 321 Ill. 538, 152 N. E. 486. It is necessary only to show that he has the means of forming an intelligent opinion derived from an adequate knowledge *of the nature and kind of property* in controversy, and *of its value.* City and County of Denver v. Lyttle, 106 Colo. 157, 103 P. 2d 1. It is not essential that every witness expressing an opinion shall have all-inclusive information of every detail of the elements entering into the value. Lebanon & Nashville Turnpike Co. v. Creveling, 159 Tenn. 147, 17 S. W. 2d 22, 65 A. L. R. 440. It is most difficult to state an all-inclusive rule fixing the qualification of witnesses to give their opinions as to the market value of land. Their testimony is ordinarily *received if they show an acquaintance with the property and are informed as to the state of the market,* the weight and credibility of their evidence being for the jury. Langdon v. Loup River Public Power Dist., 144 Neb. 325, 13 N. W. 2d 168; Beebe & Runyan Furniture Co. v. Board of Equalization, 139 Neb. 158, 296 N. W. 764; 1 Orgel on Valuation Under Eminent Domain (2d Ed.), §§ 132 and 135, pp. 564 and 580, respectively." (Emphasis supplied.)

We have recently restated the same rules in Chaloupka v. State, 176 Neb. 746, 127 N. W. 2d 291, and Dawson v. City of Lincoln, 176 Neb. 311, 125 N. W. 2d 908.

There is no evidence that either Christensen or Hall were property owners. The theory on which the trial court received this evidence, over objection, was that these two witnesses were qualified in the same manner as owners, since they were members. This was error as we have seen. The lack of foundation otherwise is almost apparent. There is a total absence of testimony that they were familiar with real estate values; that they were informed as to the state of the market; or that they kept track of sales or any other pertinent in-

formation usable as a basis for an intelligent estimate of value. Mere familiarity with the physical structure and location of the church does not automatically render them competent to testify as to value, nor does participation in the remodeling activities beginning 14 years prior to the taking furnish an adequate basis. Testimony as to the cost of remodeling the property 8 to 14 years ago is not competent evidence of market valuation because it is not relevant and is too remote in point of time. See, Dietrichs v. Lincoln & Northwestern R. R. Co., 12 Neb. 225, 10 N. W. 718; Omaha Southern Ry. Co. v. Todd, 39 Neb. 818, 58 N. W. 289; Raapke & Katz Co. v. Schmoller & Mueller Piano Co., 82 Neb. 716, 118 N. W. 652; 5 Nichols on Eminent Domain (3d Ed.), § 21.2, p. 410.

Appellee also argues that knowledge of the market is not essential; that the church property is unique and peculiar in nature; that there are no comparable sales in the area; and that it is necessary to look to the intrinsic value of the property or some other means of fixing its valuation. On this point this court said in Graceland Park Cemetery Co. v. City of Omaha, 173 Neb. 608, 114 N. W. 2d 29, as follows: "The fair market value of property implies proof of sales of similar property in the community as a means of fixing the value of the property taken. When the property is such that evidence of fair market value is not obtainable, necessarily some other formula for fixing the fair value of the property must be devised. This is true, as we view it, of such properties as school yards, church yards, college campuses, buildings under construction, and cemeteries. 1 Orgel on Valuation under Eminent Domain, § 38, p. 175."

Where there is proof that there is no market value of property with a specialized use, such as a church, convent, hospital, college premises, or the like, the general rule is that resort may be had to some other method of fixing the value of property. Newton Girl Scout Council, Inc. v. Massachusetts Turnpike Authority, 335 Mass.

189, 138 N. E. 2d 769. See, 4 Nichols on Eminent Domain (3d Ed.), § 12.32, pp. 217 to 228; 5 Nichols on Eminent Domain (3d Ed.), § 18.41 (3), p. 230, § 18.42, p. 234; Jahr, Eminent Domain, §§ 71, 78, 82, pp. 102, 111, 116 (specialty uses), §§ 83, 84, pp. 117, 118 (properties of nonprofit organizations); 1 Orgel on Valuation under Eminent Domain (2d Ed.), §§ 30, 37 to 40, especially at pp. 177 to 179, 181 to 183; Manify, Elements of Damages in Eminent Domain, 34 B.U.L. Rev. 146, 151, 152; McCormick, The Measure of Compensation in Eminent Domain, 17 Minn. L. Rev. 461, especially at pp. 467 to 470.

Depending on the nature of the property, the authorities have supported different methods of determining value in these situations. Expert testimony as to reproduction or replacement cost, less depreciation, has been approved in many cases as competent foundation evidence to support an opinion as to valuation. See 4 Nichols on Eminent Domain (3d Ed.), § 12.32, notes 18 and 19, pp. 227, 228, and cases cited thereunder.

The difficulty with appellee's position in this respect is the total absence of qualifications or foundation testimony by these witnesses supporting foundational facts for any other method of valuation of the property. These witnesses were not examined in the area of the total cost of the property, its reproduction or replacement cost with allowances for depreciation. Their valuation testimony was based on conjecture and speculation. The prejudicial nature of this testimony is demonstrable from the record. The appellee called three expert witnesses who gave valuations of $60,000 to $65,000 before the taking, with opinions as to remainder damage ranging from $6,150 to $7,200. Both Christensen and Hall fixed the value before the taking at $80,000, with opinions as to remainder damage at $20,000 and $30,000, respectively. It is conceded by the State that the testimony of the three experts of the appellee was competent. In each case their testimony was supported by their estimate of reproduction and replacement cost, less depreciation.

838

The judgment of $10,950 was $3,750 above the upper limit of the appellee's competent valuation testimony. While the jury is not bound by the testimony of any particular witness, it does not appear that it was not influenced by the incompetent opinions as to valuation by the witnesses Christensen and Hall. Quite the opposite conclusion is more agreeable to reason. In any event error in the admission of evidence is presumed to be prejudicial unless it clearly appears from the record that it did not affect unfavorably the party against whom it was admitted. Keene Coop. Grain & Supply Co. v. Farmers Union Ind. Mut. Ins. Co., 177 Neb. 287, 128 N. W. 2d 773; Grantham v. Farmers Mutual Ins. Co., 174 Neb. 790, 119 N. W. 2d 519. We come to the conclusion that prejudicial error was committed in the admission of the opinons of the witnesses Christensen and Hall as to valuation. The judgment is reversed and the cause remanded for a new trial.

REVERSED AND REMANDED.