RONALD HENNIS, APPELLEE, V. MICHAEL T. O'CONNOR ET AL.,
APPELLANTS.

388 N.W.2d 470

Filed June 13, 1986. No. 85-131.

William R. Johnson of Kennedy, Holland, DeLacy & Svoboda, and Robert J. Harrop of Gage & Tucker, for appellants.

Eugene P. Welch of Gross, Welch, Vinardi, Kauffman & Day, P.C., for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

PER CURIAM.

This was an action for slander brought by Ronald Hennis against Michael T. O'Connor and Transcon Lines, Inc. The jury returned a verdict for the plaintiff in the amount of $10,000. The defendants appeal from the judgment on the verdict.

The plaintiff sought general damages for statements alleged

to have been made by Transcon's sales manager, O'Connor, following the termination of Hennis' employment as a salesman with Transcon. Specifically, Hennis alleged that O'Connor made statements which he knew to be false to the plaintiff's friends, business associates, and customers, accusing him of theft of Transcon property.

At the trial three former Transcon customers testified about statements allegedly made by O'Connor. The first, Linda DeGoler, president of Midlands Chemical Company, testified that O'Connor told her in the summer of 1983 that Hennis was no longer with Transcon. When she asked why, O'Connor, who was following up on Hennis' accounts, responded that Hennis was let go because he was caught or observed taking things from the office. The things taken were not specified. DeGoler was allowed, over objection, to testify that it was her impression that the statement was an attack on Hennis' integrity. O'Connor denied making any statements to DeGoler that Hennis had been observed taking company property.

The second witness, Theresa Stiles, office manager of Bruce Chapman Industries, testified that she learned of the termination of Hennis' employment with Transcon when O'Connor and another man came to her office in June or July of 1983. When she asked why Hennis had been terminated, O'Connor responded that "some things" going on in the office required that Hennis be fired. Stiles testified that the things going on were theft of petty cash and turning in personal receipts as business expenses. She testified, over objection, that her impression was that Hennis had been fired because of the thefts in the office. On cross-examination Stiles said that O'Connor told her that she could see a letter in Hennis' personnel file which she inferred would say that Hennis had been fired because of the thefts. She did acknowledge that O'Connor never directly stated that Hennis had taken the missing Transcon items. Nevertheless, it was her impression that O'Connor intended to place the inference of theft by Hennis into her mind. Stiles did recall O'Connor's stating that Hennis had been dishonest in turning in expense receipts and that there had been thefts at the office. At that time she was unaware of anyone else's being fired at Transcon. O'Connor

testified that he did discuss the Transcon thefts with Stiles during his visit, but denied associating them with Hennis. O'Connor indicated that he mentioned the thefts because he was ill-prepared for the call and was grasping for things to say. He had no reason to suspect that Hennis was involved in the thefts at that time. O'Connor denied that he invited Stiles to look at a letter in Hennis' personnel file.

The plaintiff's third witness, Elaine Wright, traffic manager for Progress Publications, Inc., testified that Hennis called in the summer of 1983 to say he was no longer with Transcon. A few days later, O'Connor came to her office. O'Connor's response to Wright's expression of disappointment with Hennis' firing was that he could tell her "some things that you would not believe." He also stated that some things were missing from Transcon. O'Connor testified that he never told Wright that Hennis had been involved in any sort of dishonest conduct or theft. He also denied making any allegations of theft or crime by Hennis to *any* of his former Transcon customers.

Keith Heinrich, a terminal manager for Transcon, testified that Hennis' firing had nothing to do with the suspected thefts at Transcon.

Monica Hennis, the plaintiff's wife, testified that O'Connor's alleged statements to DeGoler, Stiles, and Wright caused Hennis to become depressed and to have more sleepless nights than before he learned of the statements. Hennis himself testified that O'Connor's accusations caused him anxiety, depression, humiliation, and many sleepless nights.

Hennis has worked as a salesman for a Transcon competitor since a month or so after his firing.

At the end of the plaintiff's case and also at the close of all the evidence, the defendants moved for a directed verdict on grounds that the plaintiff had not made a submissible case of slander per se nor a showing of special damages. Both motions were denied. Following the jury verdict and entry of judgment, the defendants moved for judgment notwithstanding the verdict or, in the alternative, for a new trial. The motion was overruled.

O'Connor and Transcon make five assignments of error on appeal: (1) The trial court erred in concluding that Hennis made

a submissible case of slander per se; (2) The court erred in submitting the issue of slander per se to the jury; (3) The court erred in allowing the witnesses to testify as to their subjective impressions; (4) The court erred in failing to properly instruct the jury concerning the issue of slander per se; and (5) The court erred in failing to grant a new trial on grounds that the verdict was against the weight of the evidence.

Initially, the defendants claim that O'Connor's alleged statements did not amount to slander per se; therefore, the trial court erred in failing to grant their motions for a directed verdict and for judgment notwithstanding the verdict.

Hennis neither alleged nor proved special damages. "[S]poken words are 'slanderous *per se*' only if they falsely impute the commission of a crime involving moral turpitude, an infectious disease, or unfitness to perform duties of an office or employment, prejudice him in his profession or trade, or tend to disinherit him." *Nelson v. Rosenberg*, 135 Neb. 34, 38, 280 N.W. 229, 231 (1938). See, also, *Hutchens v. Kuker*, 168 Neb. 451, 96 N.W.2d 228 (1959); *Barry v. Kirkland*, 149 Neb. 839, 32 N.W.2d 757 (1948); *Davis v. Meyer*, 115 Neb. 251, 212 N.W. 435 (1927). Where a statement is "ambiguous or [is] meaningless unless explained, or [is] *prima facie* innocent, but capable of defamatory meaning, it is necessary to specially allege and prove the defamatory meaning of the words used, and to allege and prove special damages." *Hudson v. Schmid*, 132 Neb. 583, 587, 272 N.W. 406, 409 (1937).

For a plaintiff to make a submissible case of slander *per se*, the alleged defamatory statements must convey not only "the expression of a wrong which is actionable, but also the nature of the particular wrong." *Id*. The language, by its nature and obvious meaning, must falsely charge a person with commission of a crime or subject him to public ridicule, ignominy, or disgrace. See *Treutler v. Meredith Corporation*, 455 F.2d 255 (8th Cir. 1972). In *Hudson, supra*, the defendant's threat of arrest, accompanied by the charge of possession of a "jumper," did not express or suggest the nature of the wrong done, even assuming that the statement conveyed the idea of wrongful acquisition. Likewise, in *Nelson v. Rosenberg, supra* at 38, 280 N.W. at 231, the defendant's statement that the

plaintiff was one of the biggest "crooks" in Dawson County did not amount to slander per se because the term "crook" did not "with any degree of certainty suggest the nature of the wrong done."

In determining whether a statement is actionable per se, the court is to construe the language in its ordinary and popular sense. *Nelson v. Rosenberg, supra*. The court should neither strain to find innocent meanings for statements which are prima facie defamatory nor place forced constructions on terms which may fairly be deemed harmless. See *Tennyson v. Werthman*, 167 Neb. 208, 92 N.W.2d 559 (1958).

On a motion for directed verdict or judgment notwithstanding the verdict,

> the moving party is deemed to have admitted as true all the material and relevant evidence admitted which is favorable to the party against whom the motion is directed, and, further, the party against whom the motion is directed is entitled to the benefit of all proper inferences which can reasonably be deduced therefrom.

*Farm Bureau Life Ins. Co. v. Luebbe*, 218 Neb. 694, 697, 358 N.W.2d 754, 757 (1984).

In the present case there was testimony that O'Connor made statements while in the course of his employment with Transcon that Hennis was let go because he was observed taking things from the office. There was also testimony that O'Connor stated that Hennis was let go because of things going on in the office, which included the theft of petty cash and the submission of personal receipts as business expenses. Viewing this evidence as true and drawing all reasonable inferences therefrom, the statements constituted slander per se. The statements, if made, conveyed both the expression of an actionable wrong (theft) and the nature of the wrong done (theft of petty cash and the fraudulent submission of expense receipts).

In their second and fourth assignments of error, the defendants contend that the trial court erred in submitting the issue of slander per se to the jury, and in its instruction to the jury in that regard.

The defendants rely on *Rhodes v. Star Herald Printing Co.*, 173 Neb. 496, 113 N.W.2d 658 (1962), *cert. denied* 371 U.S.

822, 83 S. Ct. 39, 9 L. Ed. 2d 62, for the proposition that whether a statement is actionable per se is a matter of law for the court. While *Rhodes, supra*, was a libel case, the rule is applicable to cases involving slander as well.

The Restatement (Second) of Torts § 615(1) (1977) provides that it is for the court to determine "whether a crime . . . imputed by spoken language is of such a character as to make the slander actionable per se." Comment *a.* to this section explains that if the language clearly imputes commission of a criminal offense by the plaintiff, the court is to determine if the offense is one which satisfies the requirements of the Restatement, *supra* § 571(a) and (b). Under § 571, imputation of a crime presents slander per se if the crime, in the place of publication, would be "(a) punishable by imprisonment in a state or federal institution, or (b) regarded by public opinion as involving moral turpitude." Restatement, *supra* § 571(a) and (b).

Prior to a determination that a statement amounts to slander per se, the court decides (1) whether a communication is susceptible of a particular meaning and (2) whether that meaning is defamatory. Restatement, *supra* § 614(1)(a) and (b). Then, according to the Restatement, it is for the jury to decide whether the statement, capable of a defamatory meaning, was so understood by its recipient. Restatement, *supra* § 614(2). Generally, Nebraska law is in accord with part of these procedural guidelines.

In *Thorman v. Bryngelson*, 87 Neb. 53, 127 N.W. 117 (1910), an allegation of theft was made, although not directly at the plaintiff. The trial court in *Thorman* sustained a demurrer to the plaintiff's petition alleging slander, on the ground that no cause of action had been stated. This court reversed the judgment, following a determination that the defendant's allegation of theft would be slanderous per se "if the defendant intended to charge that plaintiff was the guilty party and so intended for the bystanders to understand. As to whether he did so intend, the charge not being made in direct terms, is a question of fact for the decision of the jury." *Thorman, supra* at 57, 127 N.W. at 118. The syllabus to *Thorman* states:

> In an action for slander it is for the court to decide in the first instance whether the alleged defamatory language

used was slanderous *per se* if it were susceptible of the meaning attributed to it by the plaintiff in his petition, but for the jury to say whether the defendant by the use of the language intended to convey the idea to those who heard him that plaintiff was guilty of the crime alleged to have been committed and to so charge him.

See, also, *Treutler v. Meredith Corporation*, 455 F.2d 255 (8th Cir. 1972) (under Nebraska law, the trial court makes the initial determination as to whether the language presents a jury-submissible case of defamation); 50 Am. Jur. 2d *Libel and Slander* § 22 (1970).

In the instant case the evidence presented the jury questions as to whether O'Connor actually made the statements testified to by the witnesses DeGoler, Stiles, and Wright; whether the statements, if made, referred to the plaintiff; and the extent of any resulting damages. The issue as to what the witnesses understood the statements to mean should not have been before the jury, as their meaning was clear and unambiguous in imputing a crime. 53 C.J.S. *Libel and Slander* § 223 (1948). A review of the instructions is necessary in order to ascertain the issues actually submitted to the jury.

In its instruction No. 6 the trial court informed the jury:

Before the Plaintiff can recover the burden is upon the Plaintiff to prove by a preponderance of evidence the following:

1. That the Defendant made a slanderous statement or statements concerning the Plaintiff.

2. That the statement or statements were slanderous per se, i.e., that said statements or statement falsely charged the Plaintiff with the commission of a crime.

3. That as a proximate result of the slanderous statements or statement the Plaintiff suffered damages.

If the Plaintiff has established by a preponderance of the evidence all of the foregoing propositions, then your verdict will be for the Plaintiff in the amount of such damages. Otherwise your verdict will be for the Defendant.

It is apparent from paragraph 2 of this instruction that the jury was to determine whether the statements charged Hennis with a crime. In an attempt to assist the jury in making this

determination, the trial court gave instruction No. 7:

> Under Nebraska law, language is actionable, i.e., slanderous per se, if, by its nature and obvious meaning, it falsely charges a person with the commission of a crime.
>
> In determining whether particular language is defamatory, words complained of cannot be isolated and must be considered in the context of the entire recital or verbal exchange.
>
> Language alleged to be defamatory must be interpreted in its ordinary and popular sense, rather than in a technical manner.

The defendants argue that submission of the issue of slander per se to the jury was erroneous, as were the guidelines given in instruction No. 7. Specifically, instruction No. 7 is said to be inadequate because it fails to instruct the jury concerning the elements of the crime imputed and because it fails to instruct the jury to concern itself solely with the actual words spoken.

As previously stated, the applicable law in this case required that the trial court determine whether a submissible case of slander per se had been presented by the evidence. The question of whether the alleged statements were actually made was properly submitted by paragraph 1 of instruction No. 6. Paragraph 2 of the same instruction, however, improperly submitted the issue of slander per se to the jury.

Jury instructions are to be read as a whole, and unless they mislead the jury or fail to fairly submit the case, there is no prejudicial error. See *Maloney v. Kaminski*, 220 Neb. 55, 368 N.W.2d 447 (1985). Instruction No. 6 in the present case did not correctly inform the jurors of the issues to be decided. A proper instruction would have informed the jurors that if they found that the alleged defamatory statements had been made and that they were intended to identify the plaintiff as the thief, then the jury should determine the resulting damages.

In their third assignment of error, the defendants argue that the court erred in admitting evidence as to the circumstances surrounding the alleged statements and in allowing the witnesses to testify to their understanding, impressions, and assumptions regarding the meaning intended to be conveyed by O'Connor.

In support of this argument the defendants submit that the issue to be decided in a case of slander per se is not whether the listener thought or inferred that the speaker was accusing someone of a crime but whether the words actually spoken constitute imputation of a crime. The cases cited in support of this proposition provide that "where an innuendo is necessary to make the meaning of alleged slanderous statements clear and understandable, such statements are not slanderous *per se*." *Hudson v. Schmid,* 132 Neb. 583, 585, 272 N.W. 406, 408 (1937). See, also, *Nelson v. Rosenberg,* 135 Neb. 34, 37, 280 N.W. 229, 231 (1938) ("[i]f it was necessary to use an innuendo, it was just as necessary to allege and prove the special damages"); *Davis v. Meyer,* 115 Neb. 251, 253, 212 N.W. 435, 436 (1927) ("words, spoken and published of another, which are not obviously defamatory, will not support an action for damages, unless, by innuendo or otherwise, special damages are pleaded and proved").

In the present case it was for the court, in the first instance, to determine whether the words were susceptible of a particular interpretation and were slanderous per se. Whether the words were in fact so understood was not an issue in the present case, because the alleged statements were unambiguous in their meaning.

In determining whether an alleged statement is defamatory, Nebraska law requires that the statements complained of not be isolated and that they be considered in the context of the entire broadcast. *Treutler v. Meredith Corporation,* 455 F.2d 255 (8th Cir. 1972). An entire writing, conversation, or motion picture must also be construed as a whole. See Prosser and Keeton on the Law of Torts, *Defamation* § 111 at 781-82 (5th ed. 1984). The jury must consider the context and circumstances in which a statement was made in order to determine if a defendant actually made the alleged slanderous statements and whether they were intended to refer to the plaintiff. See 53 C.J.S. *Libel and Slander* § 209b (1948).

The statements allegedly spoken by O'Connor were slanderous per se. By definition, statements constituting slander per se are unambiguous in their defamatory meaning and do not require proof of extraneous facts. As such,

testimony by witnesses Stiles and DeGoler as to their impressions of the meaning of the statements alleged to have been made was not relevant, and was erroneous.

Permitting witnesses Stiles and DeGoler to testify, however, does not entitle O'Connor to a new trial. In the instant case the district court should have instructed the jury that as a matter of law if it believed that O'Connor said what it is alleged he said, the statements were slanderous per se and therefore what Stiles and DeGoler thought the statements meant was wholly irrelevant. In view of the fact that the court should have instructed the jury that the statements, if made, were slanderous per se, submitting the issue to the jury together with the testimony of the witnesses Stiles and DeGoler was without prejudice to O'Connor. We have frequently held that error without prejudice is not ground for reversal, see *Emery v. Mangiameli*, 218 Neb. 740, 359 N.W.2d 83 (1984), and that when a party has secured a judgment from a jury on facts in issue, the party has the right to keep the benefit of that verdict unless there is prejudicial error in the proceedings by which it was secured, *Schroll v. Fulton*, 213 Neb. 310, 328 N.W.2d 780 (1983). See, also, *El Fredo Pizza, Inc. v. Roto-Flex Oven Co.*, 199 Neb. 697, 261 N.W.2d 358 (1978); Neb. Rev. Stat. § 25-853 (Reissue 1985).

The judgment is therefore affirmed.

AFFIRMED.

BOSLAUGH, J., dissenting.

It was a close question in this case whether the defamatory statements concerning the plaintiff were slanderous per se. See *Nelson v. Rosenberg*, 135 Neb. 34, 280 N.W. 229 (1938). If the statements were not slanderous per se, the plaintiff failed to make a jury question because there was no allegation or proof of special damages. If it was necessary to use an innuendo, it was just as necessary to allege and prove that special damages resulted from the use of the words. *Nelson v. Rosenberg, supra.*

In this case witnesses for the plaintiff were allowed to testify not only as to the defamatory statements attributed to the defendants but also, over objection, as to their understanding and interpretation of the statements. This evidence was both irrelevant and prejudicial. It permitted the plaintiff to

improperly enlarge and embellish his case without pleading or proving special damages.

"[W]here an innuendo is necessary to make the meaning of alleged slanderous statements clear and understandable, such statements are not slanderous *per se*." *Hudson v. Schmid*, 132 Neb. 583, 585, 272 N.W. 406, 408 (1937). See, also, *Nelson v. Rosenberg, supra*; *Davis v. Meyer*, 115 Neb. 251, 253, 212 N.W. 435, 436 (1927) ("words, spoken and published of another, which are not obviously defamatory, will not support an action for damages, unless, by innuendo or otherwise, special damages are pleaded and proved").

In a case involving slander per se, the plaintiff is not required to prove damages, because damages are presumed. *Hutchens v. Kuker*, 168 Neb. 451, 96 N.W.2d 228 (1959). The plaintiff was allowed to obtain the benefit of this rule and then reinforce his case with inadmissible testimony as to the understanding, impressions, and assumptions made by his witnesses concerning the statements. The evidence was prejudicial under the circumstances of this case.

Error in the admission of evidence is presumed to be prejudicial unless it clearly appears from the record that it did not affect unfavorably the party against whom it was admitted. *First Baptist Church v. State*, 178 Neb. 831, 135 N.W.2d 756 (1965). The admission of testimony wrongfully received in a case tried to a jury is prejudicial error where it may have influenced the verdict. *Witte v. Lisle*, 184 Neb. 742, 171 N.W.2d 781 (1969).

The testimony by the witnesses Stiles and DeGoler that they *understood* the statements to attack the plaintiff's integrity and charge him with theft may well have influenced the jury in reaching its verdict.

The judgment should have been reversed and the cause remanded for a new trial.

HASTINGS and CAPORALE, JJ., join in this dissent.