Edwin A. **WALKER**, Appellant,

v.

The **PULITZER PUBLISHING COM-PANY**, Appellee.

No. 18994.

United States Court of Appeals
Eighth Circuit.

May 15, 1968.

As Modified on Denial of Rehearing
June 19, 1968.

Emerson Baetz, Alton, Ill., for appellant.

Robert B. Hoemeke, of Evans & Hoemeke, St. Louis, Mo., for appellee; Robert D. Evans was with him on the brief.

Before VAN OOSTERHOUT, Chief Judge, BLACKMUN, Circuit Judge, and VAN PELT, District Judge.

BLACKMUN, Circuit Judge.

In this diversity defamation case, instituted by Major General (retired) Edwin A. Walker against The Pulitzer Publishing Company, publisher of the St. Louis Post-Dispatch and owner of tele-

vision station KSD–TV at Saint Louis, Chief Judge Harper granted Pulitzer's Civil Rule 56 motion for summary judgment. Plaintiff Walker appeals.

The litigation is yet another of many defamation cases which General Walker has instituted (see Appendix, infra) and which arise out of the disturbances of September 30 and October 1, 1962, which took place on the campus of the University of Mississippi at Oxford in connection with the University's admission of its first Negro, James Meredith.

By the pleadings it is admitted:

1. The Post-Dispatch has a daily circulation of approximately 360,000, concentrated in Saint Louis and the surrounding area but with some extension elsewhere. Station KSD–TV broadcasts are received generally in eastern Missouri and southwestern Illinois.

2. In the Post-Dispatch issue of October 1, 1962, the defendant printed an editorial relating to the Oxford disturbances and saying in part:

> "As for Edwin Walker, once a major general, who is reported to have led the student rioters, he ought to be quite unceremoniously clapped into jail. He was entitled to make all the incoherent speeches he cared to about the Mississippi situation, but when he incites to violence he becomes an ordinary criminal and should be dealt with as such."

3. In the Post-Dispatch issues of October 1 and 2, 1962, the defendant printed news items with statements that "Walker, who resigned his army commission under fire for his rightist viewpoints, was seen in the rioting congratulating the students"; that General Walker "led college youths last night in one charge that fell back a hundred yards from the marshals"; that although the General had expressed a hope that there would be no violence "there was violence and Walker was among the leaders of the rioters"; that the General "led one student charge against federal marshals Sunday night on the university campus and later appeared in the midst of rioting yesterday in downtown Oxford"; and that "In his fashion, he had been something of a rallying point for young men from elsewhere in Mississippi and over the South who had come here, or wanted to come here, to make trouble. With his arrest, the military authorities made it quite clear to his following that no such trouble would be tolerated".

4. A photograph of General Walker, with the caption "Arrested for Rioting", was in the newspaper's issue of October 1.

5. On September 30 and on October 1 and 2, 1962, the defendant caused to be broadcast over KSD–TV statements that "One group of brick-throwing students was led by former Major General Edwin A. Walker"; that "One hundred fifty persons have been arrested, including former Major General Edwin A. Walker who is charged with inciting a rebellion"; that General Walker "was checked in tonight at the United States medical center for federal prisoners at Springfield, Mo. He was arrested during the day on four counts of insurrection against the United States. Walker had led a charge of students against United States marshals. * * * The center is maintained to treat prisoners with physical and mental ills"; and that "The controversial Texan got into trouble for inflammatory remarks on the campus of the University of Mississippi and for leading a charge of students against United States marshals there".

6. Prior to September 30, 1962, General Walker was "a person of political prominence" who had made "public announcements".

The plaintiff pleaded falsity of the statements published and broadcast and, specifically, that "Defendant's false statements against plaintiff and its suppression of truthful reports in plaintiff's favor were motivated by malice and a desire to hurt and harm him in his reputation and blacken his good name. * * *" The complaint also contained a paragraph

9, reproduced in the margin,[1] and another paragraph, numbered 11, which alleged that the defendant suppressed a United Press dispatch that the plaintiff had pleaded with the students to cease their violence and that they had responded to this "with a massive jeer". Actual damages of $1,000,000 and punitive damages of like amount were prayed for.

The defendant, prior to filing its answer, moved to strike the complaint's paragraphs 9 and 11 on the ground that they violated Civil Rule 8(a) and (e) (1) and its requirements that pleadings contain "a short and plain statement of the claim" and be "simple, concise, and direct". This motion was sustained by Judge Harper as to paragraph 9 but overruled as to paragraph 11.

The defendant then filed its answer asserting various defenses and, among other things, denying the allegations of falsity and of malice. Later, with supporting affidavits, depositions and exhibits, the defendant filed its motion for summary judgment.

A counter-affidavit was filed by General Walker asserting that at no time or place did he "lead or participate in a charge, movement or attack of any kind against United States marshals or United States troops or any other forces"; that on September 30, 1962, he did go upon the campus of the University of Mississippi and "address students at the university who were protesting the action of the central government of the United States * * * and in such address pleaded with such students to cease and desist from violence in their protests"; that at no time or place did he "violate any statute, regulation, law decree or ukase of the central government of the United States of America or of the State of Mississippi or any other governmental unit, body, or division"; that he has "never been convicted of any crime by any lawful court"; and that he is "not a criminal".

The fact issues of falsity and of malice, raised by the positive allegations of the complaint and by the equally positive denials of the answer, were thus recast by the unopposed material supportive of and in opposition to the motion for summary judgment.[2]

By agreement of counsel, ruling on the motion was withheld by the trial court pending the forthcoming decision by the Supreme Court of the United States on its review of Associated Press v. Walker, 393 S.W.2d 671 (Tex.Civ.App.1965), as to which certiorari had been granted, 385 U.S. 812, 87 S.Ct. 40, 17 L.Ed.2d 52 (1966). When that decision was issued on June 12, 1967, Judge Harper made his ruling forthwith.

■ Recent decisions in the public official-public figure-defamation area must

---

1. "9. The defendant, as a matter of editorial policy has for a long period of time favored the collectivization or socialization of society in the United States and, as an element of such collectivization and socialization, the enlargement and enhancement of the power of the central government of the United States as against the individual rights of the citizens and the sovereignty of the several states. To this end it has followed a plan and practice of denigrating persons of political or social prominence who publicly announce their adherence to accepted and consitutionally defined limitations upon the powers of the central government, or who publicly announce their adherence to principles of the separation of powers as between the central government and the several states. Such plan and practice was effectuated, in part, by employing the columns of the St. Louis Post-Dispatch and the news broadcasts of the plant and station known as KSD-TV to emphasize and magnify any news reports of acts or occurrences thought to reflect unfavorably on such persons, and to suppress or minimize any news reports which would reflect favorably upon such persons or which would correct or explain unfavorable reports."

2. Rule 56(e), Fed.R.Civ.P., provides in part, "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."

be cited for they are, we think, indicative and controlling here:

1.  New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), is the landmark decision to the effect that, under the First and Fourteenth Amendments, a state cannot award damages to a public official for defamatory falsehoods which relate to his official conduct unless the plaintiff "proves that the statement was made with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not". Pp. 279–280, 84 S.Ct. p. 726. The "background" for the case and its rule is "a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement caustic, and sometimes unpleasantly sharp attacks on government and public officials". P. 270, 84 S.Ct. p. 721.

2.  It was soon held that the *Times* rule also limits state power to impose criminal sanctions for criticism of official conduct of public officials to situations of similarly defined malice, that is, to statements made with knowledge of their falsity or with reckless disregard of whether they were false or not. Garrison v. State of Louisiana, 379 U.S. 64, 85 S.Ct. 209, 13 L.Ed.2d 125 (1964); Moity v. State of Louisiana, 379 U.S. 201, 85 S.Ct. 323, 13 L.Ed.2d 339 (1964); Henry v. Collins, 380 U.S. 356, 85 S.Ct. 992, 13 L.Ed.2d 892 (1965).

3.  The rule was next extended to the government employee having or appearing to have substantial responsibility for, or control over, the conduct of governmental affairs. Rosenblatt v. Baer, 383 U.S. 75, 86 S.Ct. 669, 15 L.Ed.2d 597 (1966).

4.  With these decisions on the books, our own court, two years ago, was itself confronted with a case strikingly similar to the one now before us. Pauling v. Globe-Democrat Publishing Co., 362 F.2d 188 (8 Cir. 1966). The plaintiff there was a professor of international prominence. The defendant was the present defendant's competitor newspaper in Saint Louis. We concluded that plaintiff Pauling was one who, by his statements and actions, had projected himself into the arena of public policy and controversy and into the "vortex of the discussion of a question of pressing public concern", within the language which the Supreme Court had used in a footnote to Rosenblatt v. Baer, supra, p. 86 of 383 U.S. p. 676 of 86 S.Ct. but as to which that Court had specifically stated, "We intimate no view whatever". We were impressed, pp. 195–196 of 362 F.2d, by the facts that Dr. Pauling was attempting to influence the resolution of an issue which was important, of profound effect, public, and controversial; that he was in a position of some influence on the problem's resolution; that he deemed himself influential and was undertaking to provide leadership among certain groups and to bring forces to bear upon the problem; and that the record sufficiently disclosed his activities along this line. We said:

> "We also feel that a rational distinction cannot be founded on the assumption that criticism of private citizens who seek to lead in the determination of national policy will be less important to the public interest than will criticism of government officials. A lobbyist, a person dominant in a political party, the head of any pressure group, or any significant leader may possess a capacity for influencing public policy as great or greater than that of a comparatively minor public official who is clearly subject to *New York Times*. It would seem, therefore, that if such a person seeks to realize upon his capacity to guide public policy and in the process is criticized, he should have no greater remedy than does his counterpart in public office." P. 196 of 362 F.2d.

We held that the rule of *New York Times* and its successor cases was applicable and that the particular activities of Professor Pauling fell into that area where the First and Fourteenth Amendments afford privilege to critical comment when it is free from the malice defined. And

we concluded that the proof added up to something less than the malice prescribed for the *Times* exception.

5. Next came the several opinions in Curtis Publishing Co. v. Butts, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967), up on certiorari to the title case in the Fifth Circuit, 351 F.2d 702, and to the present plaintiff Walker's own case in the state courts of Texas, Associated Press v. Walker, supra, 393 S.W.2d 671 (Tex.Civ.App.1965). Four Justices, through an opinion by Mr. Justice Harlan, concluded that the *Times* "public official" rule should not be inexorably applied to defamation actions by "public figures" where "different considerations" are present; that a public figure who is not a public official should be able to recover damages for defamation which substantially endangers his reputation "on a showing of highly unreasonable conduct constituting an extreme departure from the standards of investigation and reporting ordinarily adhered to by responsible publishers", p. 155, 87 S.Ct. p. 1991; that in the *Butts* case the evidence amply supported a finding of such highly unreasonable conduct; that, however, "The situation in *Walker* is considerably different" and

> "In contrast to the *Butts* article, the dispatch which concerns us in *Walker* was news which required immediate dissemination. The Associated Press received the information from a correspondent who was present at the scene of the events and gave every indication of being trustworthy and competent. His dispatches in this instance with one minor exception, were internally consistent and would not have seemed unreasonable to one familiar with General Walker's prior publicized statements on the underlying controversy. Considering the necessity for rapid dissemination, nothing in this series of events gives the slightest hint of a severe departure from accepted publishing standards. We therefore conclude that General Walker should not be entitled to damages from the Associated Press." Pp. 158–159 of 388

U.S., pp. 1993–1994 of 87 S.Ct. [footnote omitted]

The Chief Justice, in a separate opinion, concluded that the standard of *New York Times* did apply to "public figures" as well as to "public officials", pp. 162–165 of 388 U.S., 87 S.Ct. 1975 and that the judgment in favor of General Walker in the Texas court must therefore be reversed. Mr. Justice Brennan, joined by Mr. Justice White, agreed with this particular ground asserted by the Chief Justice for the Walker case. P. 172, 87 S.Ct. 1975. Mr. Justice Black, joined by Mr. Justice Douglas, concurred on the same ground but without receding from views previously expressed by them about wider press and speech freedoms under the First and Fourteenth Amendments. P. 170, 87 S.Ct. 1975.

We repeat the obvious with respect to the Texas *Walker* case, namely, that five Justices concluded that the *Times* standard was applicable to defamation actions by public figures, that four Justices would disallow recovery by a public figure except upon a showing of highly unreasonable publishing conduct, and that those four, however, felt that the record there did not support a finding of any such conduct. It is therefore clear that it was a unanimous Court which voted to reverse General Walker's Texas judgment against the Associated Press.

We presume to conclude that five of the Walker-Butts Justices did not disagree with our public figure approach in *Pauling* and that the other four were in accord with the result we reached on the ground that the Globe-Democrat had not indulged in highly unreasonable publishing conduct.

In any event, on the day the *Walker-Butts* cases were decided, certiorari was denied in *Pauling*, apparently without dissent. 388 U.S. 909, 87 S.Ct. 2097, 18 L.Ed.2d 1347.

6. Finally, within the month we have the Court's most recent pronouncement. St. Amant v. Thompson. 390 U.S. 727, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968). There it was evidently established that televised

statements, which were the subject of the defamation action against a public official, were made without actual knowledge of their falsity. The measure, therefore, was "reckless disregard". As to this, the Court, with one dissent, said:

> " 'Reckless disregard', it is true, cannot be fully encompassed in one infallible definition. Inevitably its outer limits will be marked out by case-to-case adjudication. * * * [R]eckless conduct is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing. There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication. * * * [R]ecklessness may be found where there are obvious reasons to doubt the veracity of the informant or the accuracy of his reports. * * * Failure to investigate does not in itself establish bad faith." [footnote omitted]

We conclude that these Supreme Court decisions and our own holding in *Pauling* govern the present case, with its admissions in the pleadings, the motion for summary judgment, and the unopposed material, permitted by Civil Rule 56(e), supporting or opposing that motion, and that they compel our affirmance of the judgment entered in the trial court in favor of the defendant. Certainly, General Walker, as was Professor Pauling, is a public figure. He has taken a strong, publicized and positive position on certain national issues. He has clearly and audibly expressed his viewpoint and his position in words and in actions. He has sought to influence and to lead public opinion. He would "play an influential role in ordering society", to use the words of the Chief Justice in his *Walker-Butts* opinion, p. 164 of 388 U.S., p. 1996 of 87 S.Ct.

And there is no more here, on this record, than there was in the record of Associated Press v. Walker, to support actual malice in the *New York Times* sense, and thus to satisfy the plaintiff's burden of proof, that is, knowledge of the falsity of the statements or the making of them with reckless disregard of whether they were false or not. The public events here were the same public events with which the other *Walker* case was concerned. With one exception, the dispatches here, as there, had their source in established, reputable and properly-regarded-as-reliable news services, and were of public interest and of the type which required immediate dissemination. The one exception was the report received by Pulitzer from its own reporter, of long and satisfactory employment, present at the scene. The defendant's officials authorized publication in the reasonable belief that the dispatches were true. The editorial material, of which the plaintiff complains, while vilifying in nature, and perhaps unnecessarily so, was based on what its writer believed to be the facts as reported in the several dispatches, in the competitive Saint Louis newspaper, and in a television broadcast from Texas. Despite the complaint's general allegation of malice, the record, by the time the trial court ruled on the motion for summary judgment, fit only what the Supreme Court in *New York Times* anticipated as "vehement, caustic, and sometimes unpleasantly sharp attacks". P. 270 of 376 U.S. p. 721 of 84 S.Ct. We therefore must hold that nothing here, singly or in the aggregate, adds up to malice within the definition of *New York Times* and the controlling opinions in *Walker-Butts*.[3]

We add that even if we were to apply the standard espoused by Mr. Justice Harlan and his three associates in their *Walker-Butts* opinion, we would still con-

---

**3.** Contrast the situation on the motion to dismiss in Walker v. Courier-Journal and Louisville Times Co., 368 F.2d 189, 191 (6 Cir. 1966), where no supporting material was presented under Civil Rule 56(e) and where the Sixth Circuit accordingly observed, "Whether there was malice was a fact question placed in issue by the complaint, and no affdavits or depositions were filed which may have removed this issue from the case."

clude that on their standard, too, the present record contains nothing more than what was shown in the Texas case and by those Justices felt to be insufficient for the plaintiff. None of the dispatches received by the defendant here would "have seemed unreasonable to one familiar with General Walker's prior publicized statements on the underlying controversy", and here, as there, "nothing in this series of events gives the slightest hint of a severe departure from accepted publishing standards". P. 159 of 388 U.S., p. 1993 of 87 S.Ct.

The plaintiff's arguments before us center mistakenly, we think, in those portions of the several *Walker-Butts* opinions which have to do with Curtis and its adversary Butts. The standards we must apply are the portions of those opinions which relate to the Associated Press and its adversary Walker.

Plaintiff Walker finally asserts that the trial court's striking of the ninth paragraph of his complaint relating to the defendant's editorial policy and practices was error in that it impaired the plaintiff's ability to show malice and permeated the entire subsequent record. It is argued that editorial policy is a pertinent factor in appraising the presence of actual malice and that it was taken into account by the Supreme Court majority in the *Curtis-Butts* controversy.

■ We are not persuaded. We might have been content had the trial court not stricken paragraph 9 of the complaint. And if the paragraphs had been allowed to remain, our conclusion would be the same. The gist of the paragraph is that the defendant, as a matter of editorial policy, favored collectivization and socialization of society; that, to this end, it had a practice of denigrating persons who publicly announce contrary views; and that the defendant's practice was to use its newspaper and television station to emphasize reports thought to reflect unfavorably on such disagreeing persons and to suppress or minimize reports thought to reflect favorably upon them.

This, we suspect, irrespective of whether one likes or dislikes it, is precisely what is done by every newspaper and news magazine which does not content itself with merely reproducing items coming to it from its established news sources. This is not to say that the practice has no limitation legally or that the members of this panel, as individuals, necessarily find themselves in agreement with the policy and practice of the St. Louis Post-Dispatch and Station KSD–TV. We feel, however, that paragraph 9, taken with the rest of the complaint, falls far short of alleging the malice defined and required by *New York Times* and *Walker-Butts*, and that it also falls short of posing the question whether the conduct of the defendant showed highly unreasonable publishing conduct.

On the record as it comes to us, with or without paragraph 9 of the complaint, there remains no genuine issue for which a trial would be necessary.

We therefore find no error. The summary judgment for the defendant is affirmed.

## APPENDIX

We are advised by counsel for the defendant and without denial by counsel for the plaintiff that the following defamation suits have been instituted by General Walker with respect to items similar or identical to those which are the subject of the present litigation:

1. Walker v. Associated Press, in District Court, Tarrant County, Texas. Judgment for plaintiff for actual damages affirmed, 393 S.W.2d 671 (Tex.Civ. App.1965). Reversed and remanded sub nom. Curtis Publishing Co. v. Butts, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967). Judgment of trial court reversed, 418 S.W.2d 379 (Tex.Civ.App. 1967).

2. Walker v. Associated Press, in Circuit Court, Duval County, Florida, removed to the United States District Court for the Middle District of Florida, No. 64–267–Civil–J.

3. Walker v. Associated Press, in Circuit Court, Pulaski County, Arkansas, re-

moved to the United States District Court for the Eastern District of Arkansas, No. LR–65–C–178.

4. Walker v. Associated Press and Times-Picayune Publishing Corp., in District Court, Caddo Parish, Louisiana. Judgment for plaintiff against both defendants affirmed in reduced amount, 191 So.2d 727 (La.App.1966). As to Associated Press: writ denied, 250 La. 98, 194 So.2d 97 (1967); cert. granted, judgment reversed and case remanded, 389 U.S. 28, 88 S.Ct. 106, 19 L.Ed.2d 28 (1967); rehearing denied, 389 U.S. 997, 88 S.Ct. 462, 19 L.Ed.2d 500 (1967). As to Times-Picayune Publishing Corp.: limited writ granted, 250 La. 102, 194 So.2d 99 (1967); judgment reversed and suit dismissed, 251 La. 772, 206 So.2d 489 (1968).

5. Walker v. Denver Post, Inc. and Associated Press, in District Court, Denver County, Colorado. Judgment dismissing complaint against Associated Press affirmed as to two counts and reversed and remanded as to one count. Colo., 417 P.2d 486 (1966). Case dismissed by agreement of parties, March 4, 1968.

6. Walker v. Kansas City Star Co. and Associated Press, in Circuit Court, Jackson County, Missouri. Dismissal reversed and case remanded, 406 S.W.2d 44 (Mo.Sup.1966).

7. Walker v. Savell and Associated Press, in Circuit Court, Lafayette County, Mississippi, removed to United States District Court for the Northern District of Mississippi. Quashing of service of process on Associated Press and dismissal of complaint against it affirmed, 335 F. 2d 536 (5 Cir. 1964).

8. Walker v. Courier-Journal and Louisville Times Co. and WHAS, Inc., in United States District Court for the Western District of Kentucky. Complaint dismissed, 246 F.Supp. 231 (W.D. Ky.1965). Reversed and remanded, 368 F.2d 189 (6 Cir. 1966). Summary judgment for defendants subsequently entered.

9. Walker v. Times Publishing Co., in Circuit Court, Pinellas County, Florida, No. 17694–L.

10. Walker v. Atlanta Newspapers, Inc. and McGill, in United States District Court for the Northern District of Georgia, Civ.No. 8590.

11. Walker v. Journal Co., in the United States District Court for the Eastern District of Wisconsin, Civ. No. 64–C–270.

12. Walker v. Journal Co., in the United States District Court for the Eastern District of Wisconsin, Civ. No. 64–C–276.

13. Walker v. Gazette Publishing Co., in Circuit Court, Pulaski County, Arkansas, Civ. No. 58857.

14. Walker v. Arkansas Democrat Co., in Circuit Court, Pulaski County, Arkansas, Civ. No. 58858.