**A. J. TREUTLER, Appellant,**

v.

**MEREDITH CORPORATION, Appellee.**

**No. 71–1106.**

United States Court of Appeals, Eighth Circuit.

Feb. 1, 1972.

William B. Woodruff, Omaha, Neb., for appellant.

William E. Morrow, Jr., Swarr, May, Smith & Anderson, Omaha, Neb., for appellee.

Before MATTHES and LAY, Circuit Judges, and HUNTER, District Judge.

HUNTER, District Judge.

This is an appeal from an order of the District Court granting summary judgment in favor of appellee Meredith Corporation, operator of local radio and television stations in Omaha, Nebraska, and against appellant A. J. Treutler, an individual. Jurisdiction is based upon diversity of citizenship under 28 U.S.C. § 1332.

Appellant's action for damages arises from certain radio and television programs transmitted by appellee's stations on February 20, 1969. On that day, appellant invited various broadcasting media personnel, including news employees of appellee, to his home for an announcement of appellant's candidacy in the forthcoming Omaha mayoral election. Appellee's news representative, Tom Murray, attended this news conference, along with several representatives of other news media. After the other news representatives had departed, Murray requested and was granted a private interview by appellant. The questions asked and the answers elicited in that interview were filmed and recorded for use later that day in two radio broadcasts and two telecasts.

The evening of February 20, 1969, appellee, through Murray, related on its regularly-scheduled news programs that appellant had announced his candidacy for mayor of Omaha. In addition, the films and recordings of the private interview between Murray and appellant were used. The respective radio and tel-

evision transmissions were substantially similar, except, of course, the television news segments included visual representations of the matters involved. The relevant portions of the text of those radio and television programs are as follows:

ANNOUNCER: Mr. Treutler is also the owner of the Ade Book Company, which sells parodies and travesties by direct mail by advertising in mens magazines such as *Man's Story*.

WOW newsman Tom Murray asked him about the firm.

MURRAY: Sir, could you describe what . . . what the Ade Book Company is?

TREUTLER: I'd rather not cover that, Tom.

MURRAY: Well, are you the owner of the Ade Book Company?

TREUTLER: Yes.

MURRAY: What kinds of books are involved and what do you do with this company?

TREUTLER: They're strictly, ah, cartoons, comics, gags.

MURRAY: How are they sold?

TREUTLER: By direct mail.

MURRAY: Now, there have been some charges that these are obscene books.

TREUTLER: There is absolutely no truth in that. There is absolutely nothing in any piece of literature that is turned out of this office that is even slightly off-color, that a five-year-old could not read.

MURRAY: Are they advertised as a come-on, as an obscene come-on?

TREUTLER: No, they are advertised as, ah, parodies, travesties, ah, satires.

MURRAY: One of the books, which Treutler gave me is entitled "Marital Love," subtitle "12 Modern Positions." The book consists of cartoons showing the henpecked husband doing housework and such while his wife relaxes. As advertised in "Man's Story," the book is called "Parody of Marital Love, 12 Modern Positions." The average twentieth century woman demands more. Here for the first time fully illustrated the way modern man keeps her happy. Shipped in a plain wrapper.

During the television segment, the audience was given an ample opportunity to view the book given to Murray by appellant and to see one of the magazine advertisements for that particular book. Similarly, a representative portion of the book and the entire text of the advertisement were read to the radio audience.

Based upon the newsman's statement, "[t]here have been charges that these are obscene books," and his question, "[a]re they [the books] advertised as a come-on, as an obscene come-on?," appellant brought suit in the District Court, claiming that appellee had defamed him by falsely charging him with criminally advertising and selling obscene literature. After a substantial period of discovery and a full evidentiary hearing, the District Court determined that the news transmissions were not defamatory and granted appellee's motion for summary judgment.[1] We affirm.

1. Because important First Amendment considerations are involved in defamation actions such as these, summary judgment procedures are particularly appropriate. Bon Air Hotel, Inc. v. Time, Inc., 426 F.2d 858 (5th Cir. 1970); Walker v. Pulitzer Publishing Co., 394 F.2d 800 (8th Cir. 1968); Washington Post Company v. Keogh, 125 U.S.App.D.C. 32, 365 F.2d 965 (1966); Time, Inc. v. McLaney, 406 F.2d 565 (5th Cir. 1969), cert. den. 395 U.S. 922, 89 S.Ct. 1776, 23 L.Ed.2d 239 (1969); Hurley v. Northwest Publications Inc., 273 F.Supp. 967 (D.Minn. 1967), aff'd 398 F.2d 346 (8th Cir. 1968). Since the District Court found that the material involved was not defamatory, in and of itself, it expressly did not reach

In Nebraska, language is actionable if, by its nature and obvious meaning, it falsely charges a person with the commission of a crime or subjects him to public ridicule, ignominy of disgrace. Rhodes v. Star Herald Printing Co., 173 Neb. 496, 113 N.W.2d 658, 661 (1962); Hutchens v. Kuker, 168 Neb. 451, 96 N.W.2d 228, 231 (1959); Tennyson v. Werthman, 167 Neb. 208, 92 N.W.2d 559, 563 (1958); Nelson v. Rosenberg, 135 Neb. 34, 280 N.W. 229, 231 (1938). And, in determining whether particular language is defamatory, the words complained of cannot be isolated and must be considered in the context of the entire television or radio broadcast.[2] Morearty v. Strunk, 118 Neb. 718, 226 N.W. 329, 331 (1929). Further, the language must be interpreted in its ordinary and popular sense, rather than in a technical manner. Tennyson v. Werthman, *supra.*

Although standing alone the isolated phrases "[t]here have been charges that these are obscene books" and "[a]re they advertised . . . as an obscene come-on" might present a question of defamation for jury determination in that they impute to appellant the commission of a crime,[3] taken in the context of the entire news segment concerning appellant's entry into the mayoral race, it is clear that any defamatory meaning conveyed by these phrases was absolutely negated by what immediately preceded and followed them.[4] A review of the news segment demonstrates the infirmity of appellant's claim of defamation. At the beginning of the news interview, the audience was informed by the announcer that appellant was the owner of a book company which sold "parodies and travesties by direct mail." Appellant was then given an opportunity to explain precisely what types of books his company sold. Directly after Murray's statement that "[t]here have been charges that these are obscene books," appellant explained that the accusation was false and that there was nothing in the materials produced by his company that was "even slightly off-color." Further, after Murray's question as to the method of advertising the books, appellant again explained that the books were advertised as "parodies, travesties, satires." Finally, and most importantly, both representative portions of the book itself and the complete advertisement were either shown or read to the audience. Appellant has never contended, either during the proceedings in the trial court or on this appeal, that the materials shown or read during the broadcasts were unrepresentative of the materials referred to by Murray in the same news presentation. Thus, aside from Murray's characterization of the materials, the members of the audience were given ample opportunity to determine from both the statements of appellant and the materials themselves whether

the question of "actual malice" or related elements. Rosenbloom v. Metromedia, Inc., 403 U.S. 29, 91 S.Ct. 1811, 29 L.Ed.2d 296 (1971); New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964); Curtis Publishing Co. v. Butts, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967).

2. See also: W. Prosser, Torts § 111 p. 748 (1971 ed.); I Harper & James, Torts § 5.6, pp. 365–366 (1956 ed.); Schy v. Hearst Publishing Co., 205 F.2d 750, 752 (7th Cir. 1953); Marteney v. United Press Ass'n, 224 F.2d 714, 715 (10th Cir. 1955); Afro-American Publishing Co. v. Jaffe, 125 U.S.App.D.C. 70, 366 F.2d 649 (1966); Houston v. Interstate

Circuit, 132 S.W.2d 903, 906 (Tex.Civ. App.1939); Phoenix Newspapers v. Choisser, 82 Ariz. 271, 312 P.2d 150 (1957).

3. The trial court must, of course, make an initial determination as to whether the language presents a jury-submissible case of defamation. Thorman v. Bryngelson, 87 Neb. 53, 127 N.W. 117 (1910).

4. During the argument in these appellate proceedings, the entire news segment relating to appellant was shown by means of a video tape device. Thus, in addition to the text of the television and radio programs, the Court was able to view the material exactly as it was presented to the television audience.

the books were "obscene" in the popular sense of that word or whether the advertisement constituted "an obscene come-on." Based upon this complete disclosure of the circumstances and viewed in the context of the entire broadcast, the language complained of by appellant was not, as a matter of law, defamatory.

Further, even assuming *arguendo* that the language which forms the basis of appellant's action is capable of defamatory meaning, it is clear that summary judgment was appropriately granted by the District Court for another reason. The news segments in question quite obviously "related to [appellant's] involvement in an event of public or general concern"; namely, his entry into the electorial race for important public office. Rosenbloom v. Metromedia, 403 U.S. 29, 52, 91 S.Ct. 1811, 1824, 29 L.Ed.2d 296, 316 (1971). See also: Monitor Patriot Co. v. Roy, 401 U.S. 265, 91 S.Ct. 621, 28 L.Ed.2d 35 (1971); Walker v. Pulitzer Publishing Co., 394 F.2d 800 (8th Cir. 1968); Bon Air Hotel, Inc. v. Time, Inc., 426 F.2d 858 (5th Cir. 1970). Thus, under the recent mandate of the Supreme Court in *Rosenbloom, supra,* the appellant's action to recover for allegedly defamatory radio and television broadcasts "may be sustained only upon clear and convincing proof that the defamatory falsehood was published with knowledge that it was false or with reckless disregard of whether it was false or not." That requisite showing of malice or reckless disregard for the truth or falsity of the words used is entirely absent in this cause. And, during these appellate proceedings, appellant concedes that he has no further evidence to adduce upon the issue of malice. Therefore, for this additional reason, summary judgment was properly entered in favor of appellee. Miller v. News Syndicate Co., 445 F.2d 356 (2nd Cir. 1971).

Accordingly, the District Court's grant of summary judgment against appellant and in favor of appellee is affirmed.