Donald R. WOOLBRIGHT, Plaintiff-Appellant,

v.

SUN COMMUNICATIONS, INC., a Corporation, d/b/a Daily Banner-News, and Donald R. Stimble, an Individual, d/b/a Daily Banner-News, Defendants-Respondents.

No. 56106.

Supreme Court of Missouri, Division No. 1.

June 12, 1972.

Lawrence O. Willbrand, St. Louis, for plaintiff-appellant.

Evans & Hoemeke, Robert D. Evans, Robert B. Hoemeke, Michael P. Casey, St. Louis, for respondents.

LAURANCE M. HYDE, Special Commissioner.

Action for $27,500 damages for libel. Defendants' motion for summary judgment was sustained and judgment entered for defendants. Plaintiff appeals from this judgment. We have jurisdiction because notice of appeal was filed in the trial court prior to September 11, 1970, the effective date of the act (H.B. 34, Third Extra Session 1970) increasing the jurisdiction of the Court of Appeals to $30,000. We affirm the judgment.

The article plaintiff claims was false, defamatory and libelous was as follows:

### "Prosecutor Issues Warning

"Andrew H. McColloch, St. Charles County prosecuting attorney, today issued a warning to citizens who attended a public auction on Saturday, June 28 in St. Peters that their names and bank account numbers may be used on stolen forged checks soon.

"McColloch said that six persons who bought items at the auction have already been victims of the forger. Checks stolen from the Tower Grove Bank & Trust Co. were used.

"The auction was run by D. R. Woolbright of St. Louis, who apparently is using the names and bank account numbers of purchasers to forge checks.

"The six checks cashed so far have each been for $360. They have been cashed throughout the country at banks other than where the accounts are held.

"McColloch explained that Woolbright, a known check forger, is able to cash the checks because he has legitimate names and bank account numbers. When he goes to a bank to cash one of the checks, the bank will call the bank where the account is held, and since the name and account number is correct, the check will be cashed.

"McColloch urged anyone who purchased merchandise at the sale to immediately change their bank account number. He said that his office has the names of seven other purchasers, but he believes there are probably still many more purchasers who are unaware of the forgeries.

"McColloch said that it was 'through the diligent efforts of the office of Robert A. Koester, sheriff of St. Charles County, that it was determined that the payees named in the stolen checks were purchasers at the auction.' The Sheriff's Office said that alertness of employes of the Bank of O'Fallon helped to determine how the correct bank account numbers were obtained.

"McColloch said that it has not been determined yet if the merchandise at the sale was stolen or not. Woolbright acquired the great number of checks by requiring that all purchasers pay by personal check."

Defendant claims the article was constitutionally privileged because it was a publication of a public warning made by the prosecuting attorney about a matter of legitimate public interest and concern, relying on New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686, and subsequent cases hereinafter cited. Plaintiff makes no claim that the article was not about a privileged matter but relies on Moritz v. Kansas City Star Co., Mo.Sup. en banc, 364 Mo. 32, 258 S.W.2d 583, holding that if the publisher summarizes or abridges or undertakes to state additional facts based on its own investigation the publication of such additional facts is not privileged. Plaintiff say the article did this by stating in paragraph three that he "apparently is using the names and bank account numbers of purchasers to forge checks"; and by stating in paragraph five that plaintiff was "a known check forger." Plaintiff says the article did not indicate to whom the use of names and account numbers was apparent and this should be construed as a conclusion of the publisher. Plaintiff also says the statement that he was "a known check forger" was not attributable to the prosecuting attorney.

Defendants say a fair reading of the article shows all the charges are those of the prosecutor and that the article did not summarize or make additions to the prosecutor's statement. The affidavit of the reporter, who wrote the article, filed with the motion for summary judgment was that all the facts stated in the article concerning the method used to forge and cash checks and plaintiff being "a known check forger" came from the prosecuting attorney; and that the prosecuting attorney exhibited several forged checks and asked that the matter be published so purchasers at the sale could protect themselves. Affidavits of the publisher of the paper and the reporter who wrote the article also were that they had no malice toward plaintiff and did not know him. The reporter's affidavit was that all statements in the article were made by the prosecuting attorney except the statement of the sheriff concerning discovery of the method used. The court found "these affidavits are not controverted"; that "the news article in question is a fair and impartial report of a statement and warning issued by the prosecuting attorney of St. Charles County to the citizens of that county and published at the request of the Prosecuting Attorney"; and that "there is no factual issue concerning malice."

Moritz v. Kansas City Star Co., supra, relied on by plaintiff was decided prior to New York Times Co. v. Sullivan, supra, which somewhat weakens its authority since it and the cases following it seem to have expanded the area of public interest. However, Moritz was based on the principle that in publishing what he is privileged to report "the publisher need not publish the entire proceedings, but whatever summary or abridgment he chooses to make, must be a fair statement, and when he undertakes to state additional facts, * * * gleaned from his own investigation, he does so at his peril, if they are false, exactly the same as he would in connection with an unprivileged matter." 258 S.W.2d, l. c. 586. In Moritz, two articles were written about a streetcar collision, after which the police arrested Moritz. The collision was near Moritz's home and he said he was assisting an injured neighbor. The article stated the police claimed Moritz, a lawyer, was interfering with their rescue work and thought he was trying to have injured passengers agree to let him represent them. There was a police report made about this. "The first article, however, was not written or based upon the written police report." 258 S.W.2d, l. c. 587. The second article concerned the charge of interfering with police against Moritz being set for trial in the municipal court. Both articles contained statements about Moritz seeking the names of those injured to represent them in damage claims. The jury found

for Moritz so we said: "[W]e must accept his version of the matter and his proof that in so far as the articles concern his conduct in soliciting law business the articles are a misstatement of fact and untrue." 258 S.W.2d, l. c. 588. Judgment for Moritz, set aside by the trial court, was ordered reinstated.

In Moritz, the information found to be false did not, as here, report a statement issued by a public officer but was considered to have been made by the reporter on the basis of his own investigation. New York Times v. Sullivan, supra, stated the principle that in matters of public concern, public men and candidates for office, publication is privileged whether false or not unless done with actual malice. (84 S.Ct. 710, 726–727.) As therein stated "actual malice" means "with knowledge that it was false or with reckless disregard of whether it was false or not." In this case, the court, on uncontroverted affidavits, found there was no issue of malice. Time, Inc. v. Hill, 385 U.S. 374, 87 S.Ct. 534, 17 L.Ed. 2d 456, applied the New York Times principle to a report in Life magazine of a play in a theatre which was based on the experience of the Hill family being held in their home by escaped convicts. The play and the article about it and pictures with it showed violence to and humiliation of the family which was false and untrue. The Supreme Court reversed a state court judgment for plaintiff saying because of "the failure of the trial judge to instruct the jury that a verdict of liability could be predicated only on a finding of knowing or reckless falsity in the publication of the Life article." 87 S.Ct., l. c. 547. The court in determining that the rule of New York Times Co. v. Sullivan applied said: "The guarantees for speech and press are not the preserve of political expression or comment upon public affairs, essential as those are to healthy government * * * We have no doubt that the subject of the Life article, the opening of a new play linked to an actual incident, is a matter of public interest."

More recently, and especially applicable here, in Time, Inc. v. Pape, 401 U.S. 279, 91 S.Ct. 633, 28 L.Ed.2d 45, the court applied the New York Times Co. v. Sullivan rule to an article based on a report of the U.S. Commission on Civil Rights of allegations concerning the treatment of a Negro family by a Chicago Deputy Chief of Detectives and other officers with him. The Time article did not state these charges were allegations made to the Commission but reported them as charges made by the Commission. The Court of Appeals considered this to be a falsification of the report and that intent to inflict harm through falsehood could reasonably be inferred making the issue of malice a jury issue. 91 S.Ct., l. c. 637. The Supreme Court said: "Time's omission of the word 'alleged' amounted to the adoption of one of a number of possible rational interpretations of a document that bristled with ambiguities. The deliberate choice of such an interpretation, though arguably reflecting a misconception, was not enough to create a jury issue of 'malice' under New York Times." 91 S.Ct., l. c. 639. The court, however, cautioned that it was not "to be understood as making the word 'alleged' a superfluity in published reports of information damaging to reputation." 91 S.Ct., l. c. 640. For a review of many applicable cases see Estes v. Lawton-Byrne-Bruner Insurance Agency Co., Mo.App., 437 S.W.2d 685; and Rowden v. Amick, Mo.App., 446 S.W. 2d 849. See also Diener v. Star-Chronicle Pub. Co., 230 Mo. 613, 132 S.W. 1143; Tilles v. Pulitzer Pub. Co., 241 Mo. 609, 145 S.W. 1143.

Certainly defendants' publication of the public warning of the prosecuting attorney was privileged and plaintiff does not contend otherwise. Furthermore, we consider that all of it must reasonably be construed as the statement of the prosecuting attorney, especially in view of the uncontroverted affidavits. The article commences by saying the prosecuting attorney has "issued a warning" about the matter of

forged checks. The prosecuting attorney's name appears in this rather short article six times as the source of the information contained in it saying he "said" (three times), "explained," "urged." The very sentence which plaintiff claims to be a comment of defendants says: "McColloch *explained* that Woolbright, a known forger, is able to cash the checks." (Emphasis ours.) The other sentence saying plaintiff "apparently is using the names and bank account numbers of purchasers" immediately follows the two sentences saying the prosecuting attorney is warning about this method of forgery and that six purchasers at plaintiff's auction have been victims. Nothing in the article indicates any view or opinion of defendants or any source of information except the prosecuting attorney. There is no basis for finding actual malice or that the reporter or publisher had any reason to believe it was not true. As we said in Brown v. Kitterman, Mo. Sup., 443 S.W.2d 146, 155: "There are no facts alleged in the petition from which it could be found that the alleged falsehoods were published with malice, that is, with knowledge of their falsity or with reckless disregard of whether they were true or false." See also Spradlin's Market, Inc. v. Springfield Newspapers, Inc., Mo. Sup., 398 S.W.2d 859; Walker v. Pulitzer Publishing Co., U.S.C.A. 8th, 394 F.2d 800. We hold entry of summary judgment was proper.

The judgment is affirmed.

PER CURIAM:

The foregoing opinion by LAURANCE M. HYDE, Special Commissioner, is adopted as the opinion of the court.

HOLMAN, P. J., SEILER, J., and CAVE, Special Judge, concur.

BARDGETT, J., not sitting.